MASSACHUSETTS MUT. LIFE INS. CO. *v.* TAYLOR IMPLE-
MENT & VEHICLE CO.

*(Jackson,* April Term, 1917.)

1. **JUDGMENT. Lien. Common-law and statute.**

Judgment liens on real estate are purely statutory, no such liens
existing at common law. (*Post, p.* 33.)

Cases cited and approved: Gardenhire v. King, 97 Tenn., 585;
Weaver v. Smith, 102 Tenn., 47.

2. **JUDGMENT. Lien. Residence of debtor. Statute.**

One against whom a decree was obtained in the chancery court
of S. county appealed, and gave an appeal bond signed by
surety. The decree was affirmed in the supreme court sitting
in another county, and a decree rendered against the appellant
and the surety, and, after a *procedendo* was filed in the office of
the clerk of the chancery court of S. county, a decree was ren-
dered by that court. After the *procedendo,* but before the
chancery court's decree, the surety borrowed money from com-
plainant secured by deed of trust on property mentioned in his
affidavit, which deed of trust was filed for record before the
chancery court's decree, without actual notice of the decree
against the surety. Thompson-Shannon's Code, section 4708,
makes decrees obtained in any court of record in the county
where the debtor resides a lien upon his land; and section 4709
provides that, if rendered in any other county than that in
which the debtor resides, the lien shall be effective only from
the time when a certified copy of the decree is registered in the
county where he resides. *Held,* that the supreme court's judg-
ment was a judgment obtained in a court of record in another
than S. county, and did not fix a lien on the surety's land until
registered in that county, as was done when its court's decree
was made the decree of the chancery court. (*Post, pp.* 33-38.)

Cases cited and distinguished: Reid v. House, 21 Tenn., 576;
Vance's Heirs v. Johnson, 29 Tenn., 214.

3. JUDGMENT. Lien. Time of accrual. Decree of supreme court. Adoption by chancery court.

A decree of the supreme court on appeal from the chancery court of S. county, after the *procedendo* was filed in the lower court, was not the decree of that court until adopted as the decree of that court and entered upon its minutes, in respect to the time when a judgment lien arose. (*Post, pp.* 38, 39.)

Cases cited and approved: Fraker v. Brazelton, 80 Tenn., 280; State v. True, 111 Tenn., 294.

4. JUDGMENT. Entry. Necessity.

The action of a court is not complete nor effective for any purpose until a record thereof has been spread upon the minutes of the court, and the minutes have been duly signed or authenticated. (*Post, pp.* 38, 39.)

5. LIS PENDENS. Notice of lien. Description of property.

Where a surety on an appeal bond, who set out in his affidavit his ownership of certain land, was a party to the case on appeal under Thompson-Shannon's Code, sections 4873, 4893, 4901, but where his responsibility was not fixed before an affirmance on appeal, the mere fact that he was a party to the case did not fix a lien on his realty, where the pleadings in the suit did not describe the property so as to enable a purchaser or mortgagee to identify it. (*Post, pp.* 39, 40.)

Case cited and distinguished: Boshear v. Lay, 53 Tenn., 163.

Code cited and construed: Secs. 4873, 4893, and 4901 (Thomp. Shan.).

6. LIS PENDENS. Notice. Description of property.

The principle of *lis pendens* is that the proceedings must be of such character as to point out to all the world the property or right affected by it. (*Post, pp.* 39, 40.)

7. LIS PENDENS. Notice of lien. Surety's affidavit.

The affidavit as to a surety's ownership of land taken by the clerk of court formed no part of the pleadings or of the record proper, but was taken for the convenience or the protection of the clerk, and the fact that the surety listed certain realty in his affidavit did not fix any lien on the land. (*Post, pp.* 40, 41.)

8. **APPEAL AND ERROR.** Appeal bond. Surety.

A surety does not impound his property by signing an appeal bond. (*Post, p.* 41.)

9. **JUDGMENT.** Lien. Filing abstract. Statute.

Acts 1897, chapter 96 (Thompson-Shannon's Code, section 4709a et seq.), passed to regulate the lien acquired by *lis pendens*, etc., on land in counties other than that in which the judgments were rendered or the *lis pendens* arose, and requiring an abstract of the judgment to be filed in the register's office of the county where the land sought to be reached is situated, has no application where the decree of the supreme court sitting in another county was made the decree of the chancery court in the county of the debtor's residence, as there was then no necessity for filing any abstract of the supreme court's decree in the register's office. (*Post, pp.* 41, 42.)

Acts cited and construed: Acts 1897, ch. 96.

Cases cited and approved: Johnson v. Ball, 9 Tenn., 291; Miller's Lessee v. Estill, 16 Tenn., 453; Porter v. Earthman, 12 Tenn., 359.

Code cited and construed: Sec. 4709a (Thomp. Shan.)

---

FROM SHELBY

---

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. F. H. HEISKELL, Chancellor.

R. LEE BARTELS, for plaintiff.

J. W. CANADA, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

The bill in this case was filed to enjoin the sheriff of Shelby county from selling certain real estate under an execution from the chancery court. A demurrer was interposed, which was overruled by the chancellor, and an appeal allowed to the court of civil appeals. That court affirmed the decree below, and the case is before us on petition for *certiorari* filed by the defendant.

On April 1, 1914, the defendant, Taylor Implement & Vehicle Company, obtained a decree against Ford N. Taylor in the chancery court of Shelby county for about $7,000. Ford N. Taylor appealed from said decree to this court, and gave an appeal bond, with W. F. Taylor as surety, on April 2, 1914. This bond was in the usual form, and for $8,000. On the bond appears the following affidavit from W. F. Taylor, the surety:

"W. F. Taylor, surety on this bond, makes oath in due form of law that he is worth twenty thousand dollars in property subject to execution in his own right, free and unincumbered after paying all debts, within the jurisdiction of this court, consisting in the following described real estate, to wit:

1071 Poplar avenue, worth..........$15,000.00
130x150 feet, corner Watkins and Lin-
    den Ave., worth..................  4,000.00
                        "W. F. TAYLOR.
"Subscribed and sworn to 1st day of April, 1914.
            "LAMAR HEISKELL, C. & M."

The decree of the chancery court was affirmed in this court on June 29, 1915, and a decree rendered here against Ford N. Taylor and W. F. Taylor, his surety, for the amount of the debt, interest, and costs.

A *procedendo* from this court went down and was filed in the office of the clerk and master of the chancery court of Shelby county on July 7, 1915. On July 30, 1915, a decree was rendered by the chancery court upon said *procedendo,* making the decree of this court the decree of that court.

Meanwhile, on July 9, 1915, W. F. Taylor and wife borrowed from complainant, the Massachuetts Mutual Life Insurance Company, $7,500, and to secure the payment of this sum executed a deed of trust upon the Poplar street property referred to in the aforesaid affidavit. The said trust deed was filed for record in the register's office of Shelby county, July 16, 1915.

The execution sought to be enjoined herein issued in the case of Taylor Implement & Vehicle Company against Ford N. Taylor to satisfy the recovery decreed in that case. Some other facts appear in the record which it is not necessary to detail.

It is conceded that the complainant insurance company had no actual notice of the decree against W. F. Taylor, rendered by this court, at the time the trust deed on the Poplar street property was recorded. The question presented for determination

is whether the proceedings mentioned and the decree of this court fixed any lien upon the said property of which the insurance company was bound to take notice.

Judgment liens on real estate are purely statutory. No such liens existed at common law. *Gardenhire* v. *King,* 97 Tenn., 585, 37 S. W., 548; *Weaver* v. *Smith,* 102 Tenn., 47, 50 S. W., 771.

Our statutes bearing on this controversy, as reproduced in Thompson's-Shannon's Code, are as follows:

"4708. Lien on Land. Judgments and decrees obtained in any court of record of this State, in the county where the debtor resides at the time of rendition, shall be a lien upon the debtor's land from the time the same were rendered.

"4709. Upon Registration, When. If rendered in any other county than that in which the debtor resides, the lien shall take effect only from the time when a certified copy of the judgment or decree shall be registered in the county where the debtor resides, if he resides in the State, or if not, then in the county where the land lies."

"4711. Unless Prevented by Injunction. If the sale within the twelve months is prevented by injunction, writ of error, appeal in the nature of a writ of error, or other adverse proceeding in court, or by appeal from judgments and decrees of courts of equity in this State to the supreme court; the lien will be continued, provided the creditor shall issue ex-

138 Tenn.—3

ecution and sell the land within one year after the injunction is dissolved, the judgment or decree affirmed, or adverse legal proceeding dismissed.''

As stated above, W. F. Taylor was surety on the appeal bond, and no judgment was rendered against him until the case was disposed of on appeal by this court sitting at Jackson. It is insisted for the complainant that said judgment against W. F. Taylor was a judgment rendered in a county other than the county in which the debtor resided, and that no lien could have fastened on the real estate of W. F. Taylor as a result of said judgment until a certified copy or an abstract thereof was registered in Shelby county.

The contrary contention is that the jurisdiction of the supreme court covers Shelby county, and that the judgments of this court in cases appealed from Shelby county have the same force and effect as the judgments of courts actually sitting in that county. In other words, that the lien of a judgment of this court is coextensive with the jurisdiction of the court.

It is not necessary to consider authorities from other States in determining this question. The language of our own statutes must control. As a matter of fact, we think our statutes have long since been given a construction that upholds the contention of the complainant.

In *Reid* v. *House,* 21 Tenn. (2 Humph.), 576, the question arose as to the lien of a judgment of the

federal court sitting in Nashville, Davidson county, upon lands in Williamson county, and this court held that no lien followed such a judgment into Williamson county until a certified copy of. the judgment was registered in that county, where the judgment debtor resided.

The court quoted from certain of our statutes, including the sections above set out, and said:

"The question is whether judgments rendered in the federal courts are included in these provisions. Obviously they are included by the terms used, 'all judgments obtained in any court of . record in this State,' and they are as certainly embraced by the purpose and policy of the statute. If they are not embraced by these terms, and the lien be not given to them by. this or any other Tennessee statute, then they have either no lien at all, or else a lien uncircumscribed in point of time or territory. The object of the statute was that by going to the county where the land lies a purchaser might know whether there were prior conveyances or. mortgages, and by going to the county where the owner resided he might, from the courts of record . there and from the register's office, know whether the lien of any judgment had attached, and thereupon safely buy." *Reid* v. *House,* supra.

Continuing; the court said:

"But it is argued that, with reference to the jurisdiction of the federal courts, it may be said of a

debtor who resides in Williamson County that he resides in the county in which the judgment was rendered. Of this distinction it may be observed, not only that it contradicts the letter and contravenes the object of the statute, but that it is too attenuated to be either very tangible or very visible. Besides, it would alike apply to the judgments of the supreme and chancery courts. . . . ''

The court further said:

''In truth, the lien of judgments by our system is not predicated upon the more extensive or more limited territorial jurisdiction of the court rendering them. The records of the courts rendering the judgment constitute a lien upon the lands of the debtor, wherever situated, without further registration, if the county where rendered contains the domicile of the debtor; if it does not, then a certified copy of the judgment, registered in the county of the domicile, creates a lien upon by the land of the debtor wherever situated.'' *Reid* v. *House,* supra.

From the foregoing it seems that this court thought that its judgments, no more than the judgments of the federal courts, would fix a lien on real estate when rendered in counties other than the county in which the debtor resided, until such judgments were duly registered, as provided by statute. While the decision only related to a judgment of the federal court, the soundness of the *dictum* as to the lien of a judgment of this court is fully demonstrated by the reasoning of the opinion.

Referring to *Reid* v. *House,* on the point decided some years later, this court said:

"And upon this point we deem it only necessary to add that, upon reviewing that case, we are at least prepared to express our entire and deliberate approval of the principle it decides." *Vance's Heirs* v. *Johnson,* 29 Tenn. (10 Humph.), 214; 217.

We think the views expressed in the foregoing cases as to the lien of a federal court judgment have been generally accepted by the profession as applicable to judgments of this court, and it has not been supposed that a judgment rendered in this court was, without registration, a lien on the land of a judgment debtor residing in a county other than the county in which the court was sitting. When it is remembered that a judgment was not a lien upon land at common law, and that the lien of a judgment arises from the statute, and is limited by the statute, it would seem that no other conclusion could be reached. This is a court of record, and judgments rendered when the court is sitting at Jackson are "judgments obtained in a court of record" in a county other than Shelby, and, unless an unnatural construction is given to the statute, such judgments cannot fix a lien on the land of a resident of Shelby county until they are recorded in that county.

Bearing in mind that the object of our statutes is to enable a purchaser to ascertain from the records of the county of the landowner's residence whether

or not there were any judgment liens on his land, it is manifest that this object would be defeated if judgments of this court were held to be liens upon the land of those domiciled in counties where the court was not sitting. The purpose of our statutes having been ascertained and judicially declared long ago, it is the duty of this court to effectuate such purposes.

It is urged, however, in behalf of the Taylor Implement & Vehicle Company, that the judgment of this court became the judgment of the chancery court of Shelby county when the *procedendo* reached the latter court, and was there filed on July 7, 1915, nine days before the trust deed to complainant was recorded.

This argument is not sound. While the *procedendo* from this court reached the chancery court of Shelby county on July 7, 1915, the decree of this court was not made the decree of that court until July 30, 1915, fourteen days after registration of the trust deed.

Until our decree was adopted and made the decree of the chancery court of Shelby county, and entered upon the minutes of the latter court, it did not become a decree of that court. There was no decree of that court against W. F. Taylor prior to July 30th. Only a mandate was on file directing a decree against him.

The action of a court is not complete nor effective for any purpose until a record thereof has been spread upon the minutes of the court, and the minutes duly signed or authenticated. *Fraker* v. *Brazelton,* 80 Tenn. (12 Lea ), 280; *State* v. *True,* 116 Tenn., 294, 95 S. W., 1028.

It follows, therefore, that there was no judgment of a court of record against W. F. Taylor rendered in the county where he resided, nor any record of any judgment rendered elsewhere recorded in the county of W. F. Taylor's residence, until July 30, 1915, several days after the trust deed to the complainant was registered. There was accordingly no judgment lien resting on the land of W. F. Taylor at the time when said trust deed was filed for record.

We think no lien or notice by reason of *lis pendens* arose in respect to the lands of W. F. Taylor in Shelby county.

It is said that by signing the appeal bond and setting out in his justification the land here in controversy, W. F. Taylor became a party to the judgment or suit, and a lien was fastened on the land scheduled for the satisfaction of said judgment.

W. F. Taylor did not become a party to the judgment rendered aganst Ford N. Taylor in the chancery court of Shelby county nor liable for its satisfaction unless affirmed. It is true he became a party to the case under Thompson's-Shannon's Code, sections 4873, 4893, and 4901, but his responsibility was

for the judgment of this court. The mere fact that one is a party to a case, without more, does not fix a lien on his real estate.

A purchaser or mortgagee of property is not affected by the pendency of an action, under the rule of *lis pendens*, unless the pleadings in said suit described said property with respect to which the rule is invoked so as to enable the purchaser to ascertain its identity.

This court has said:

"The principle of *lis pendens* is that the proceedings must be of such character as to point out to all the world the propriety or right affected by them. 2 Kent, 101, (note). In Adams' Eq., p. 157 (note), it is said: 'The principle of *lis pendens* is that the specific property must be so pointed out by the proceedings as to warn the whole world that they meddle with it at their peril." *Boshear* v. *Lay*, 53 Tenn. (6 Heisk.), 163.

To the same effect see 25 Cyc., 1462, and authorities collected in note 8.

Nowhere in the former proceedings in any pleading or in any authorized part of the court record was any land of W. F. Taylor identified or indicated as being involved. In fact, no specific property of W. F. Taylor was involved.

We cannot look to the affidavit which the clerk and master took from W. F. Taylor. This affidavit forms no part of the pleadings or of the record

proper.. It was the duty of the clerk to require a solvent. surety on the appeal bond in the former case. The clerk was authorized to make the intending surety justify as to his financial worth. The clerk need not have done this, however, if he otherwise knew of the surety's solvency. This affidavit was a thing taken for the convenience and perhaps for the protection of the clerk, but it never constituted a part of the pleadings in the cause. The circumstance that the surety listed certain realty in the affidavit did not fix any lien on the land.

Moreover, a surety does not impound his property by signing an appeal bond. An argument is made by learned counsel for the defendant herein that such a result is to be desired, but we are referred to no authority declaring this to be the law. We know of no such rule. If such were the law, it would be well-nigh impossible for a judgment debtor to procure a surety.

We do not think that chapter 96 of the Acts of 1897 carried into Thompson's-Shannon's Code, at section 4709a et seq., has any bearing on this controversy.

That act was passed to regulate the lien acquired by judgments, *lis pendens,* etc., on land in counties other than the county in which the judgments were rendered or the *lis pendens* arose. It requires an abstract of said judgment or proceedings to be filed in the register's office of the county where the land

sought to be reached is situated. Under the Act of 1897 it would have been necessary for an abstract of a judgment of this court to be recorded in Shelby county in order to charge the lands of W. F. Taylor, had not the judgment of this court been made the judgment of the chancery court of Shelby county. When our judgment was made the judgment of the latter court, it became the judgment of a court of record in the county of the debtor's residence, and there was no necessity for filing any abstract of our judgment in the register's office. Inasmuch as the property here involved was never described or identified in any pleading in the former case, the principle of *lis pendens* has no application, as we have heretofore seen.

What we have said covers the assignments of error interposed to the action of the court of civil appeals. Other points made do not require special notice. *Johnson* v. *Ball,* 9 Tenn. (1 Yerg.), 291, 24 A. M. Dec., 451; *Miller's Lessee* v. *Estill,* 16 Tenn. (8 Yerg.), 453; *Porter* v. *Earthman,* 12 Tenn. (4 Yerg.), 359, and other decisions of this court relied on by defendant, do not seem to bear on this controversy.

The petition for *certiorari* is denied.