**Edwinna Ruth BLACKBURN**

v.

**Heath Bradley BLACKBURN.**[1]

Supreme Court of Tennessee,
at Knoxville.

Sept. 3, 2008 Session.

Nov. 13, 2008.

---

1. Mr. Blackburn died on October 28, 2005. In the proceedings below, a suggestion of death was filed soon thereafter. During a hearing addressing this motion, Mr. Black-

burn's attorney moved to have Mr. Blackburn's legal heirs substituted as parties. The trial court denied this request but ordered that Mr. Blackburn's personal representative, Brandon Blackburn, be added as a party. Mr. Blackburn's attorney agreed to prepare an order. No order appears in the record on appeal. In the notice of appeal, the Estate of Heath Bradley Blackburn was listed as the appellee. However, all entries into the Appellate Court document system, and all references by the Court of Appeals and both attorneys, continued to be to Mr. Blackburn individually. No issue has been raised on appeal regarding the status of the parties. For ease of reference, therefore, we will continue to refer to Mr. Blackburn as the appellee throughout this Opinion. Our judgment, however, is equally binding on Mr. Blackburn's personal representative.

John W. Cleveland, Sweetwater, Tennessee, for the appellant, Edwinna Ruth Blackburn.

Keith H. Grant, Dunlap, Tennessee, for the appellee, Heath Bradley Blackburn.

## OPINION

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., and WILLIAM M. BARKER, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

We granted Wife's application for permission to appeal in this divorce case to address whether the trial court properly entered the parties' divorce decree *nunc pro tunc* to June 6, 2005, the date upon which the parties announced in open court that they had reached a divorce settlement. We hold that the record does not support a finding that the trial court granted the parties a divorce that day. As a result, the divorce proceeding between

Wife and Husband was still pending on October 30, 2005, the day of Husband's death, and as such, the divorce proceeding abated on that day. We reverse the judgment of the Court of Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

### Factual and Procedural History

On February 25, 2005, Edwinna Ruth Blackburn ("Wife") filed a claim for divorce against Heath Bradley Blackburn ("Husband"). In her complaint, Wife alleged that there were irreconcilable differences [2] between the parties and that a divorce should be granted on this ground. In the alternative, Wife alleged that Husband was guilty of inappropriate marital conduct,[3] such that she was entitled to an absolute divorce.

Sometime thereafter, Wife filed an application for an order of protection against Husband. A hearing on this matter was set for June 6, 2005. During this hearing, at which no court reporter was present, the parties' attorneys announced in open court that they had reached a full divorce settlement. There is no transcript of this announcement and the court's file does not reflect what action, if any, the trial court took following the parties' announcement of settlement. At a subsequent hearing, the parties' attorneys agreed that, with exception of the disposition of a Ford Ranger, the parties announced the details of the divorce settlement to the trial court during the June 6, 2005 hearing.

Following the hearing, Wife's attorney drafted a proposed judgment of divorce, which reads in pertinent part:

[U]pon the Complaint for Divorce filed by [Wife], the testimony of the parties as heard in open Court, the statements of counsel, and the entire record as a whole, from all of which it duly appears to the Court that the parties have stipulated grounds for divorce . . ., such that the parties should be declared divorced and returned to the status of single persons; . . . [and] that [Wife] shall be restored to her maiden name, "Edwinna Ruth Swafford[.]"[4]

Wife's attorney mailed the proposed judgment to Husband's attorney on June 13, 2005. In the cover letter attached to the proposed judgment, Wife's attorney requested that Husband's attorney sign the proposed judgment, "if the same meets with your approval," and then forward the proposed judgment to the trial court for its approval. The proposed judgment was received by Husband's attorney but was never approved and signed by him and was never sent to the trial court for approval.[5]

On October 30, 2005, Husband died in an automobile accident. On November 9, 2005, Husband's attorney filed a Motion for Entry of Divorce Decree *Nunc Pro Tunc*, requesting that the trial court enter the final divorce decree *nunc pro tunc* to

2. *See* Tenn.Code Ann. § 36–4–101(14) & –103 (2005).

3. *See* Tenn.Code Ann. § 36–4–101(11) (2005).

4. The proposed divorce judgment also addressed the division of marital assets, including jewelry, a lawnmower, a Winchester rifle, a barbeque grill, a Ford Ranger, and household furnishings, goods, and effects. There is some dispute in the record as to whether the parties reached an agreement, in open court, as to who would take possession of the Ford Ranger, or whether an agreement was reached after the June 2005 hearing. However, because this case deals only with whether the parties were granted a divorce during the June 2005 hearing and not whether the trial court approved the property settlement, resolution of this issue is not necessary for our disposition of the case.

5. The record does not reflect why Husband's attorney never signed the proposed judgment.

June 6, 2005, the day the parties announced in open court that they had reached a divorce settlement.

On January 13, 2006, Wife filed a Suggestion of Death and a Motion to Dismiss. In support of her motion to dismiss, Wife argued that no entry of judgment had been signed by the trial court, and as such, the parties' divorce action abated at the time of Husband's death.

On February 10, 2006, the trial court held a hearing to address the parties' respective motions. During this hearing, Husband's attorney put on proof that Wife believed she was divorced as of June 6, 2005. Husband's attorney proffered witnesses who testified that, subsequent to the June 2005 proceeding, Wife: (1) was "adamant" that she be known by her maiden name, "Swafford," instead of her married name, "Blackburn"; (2) had "celebrated" the fact that she was divorced by going out to eat and shopping with a friend; and (3) had been seen with other men.

Wife testified, however, that she did not believe that she was divorced after the June 2005 hearing. Wife explained that she called her attorney several times after the June 2005 hearing to check on the status of her divorce proceeding. Wife denied any romantic involvement with men, other than Husband, after the June 2005 proceeding and explained that she sometimes signs her maiden name because "everyone around here knows me as Swafford" and that she signed her maiden name "even while we was [sic] married."

After all proof had been presented, the trial court asked the parties' attorneys, both of whom were present at the June 6, 2005 hearing, whether the court had "approve[d] the announcement that was made

to the Court?" Wife's attorney stated that the trial court had approved the announcement and then asked that she "prepare the documents." Husband's attorney stated that the trial court "did approve the divorce and the agreement as stated." The trial court then asked whether it indicated "to the parties at that time, as [it] routinely do[es], that the divorce is granted and approve the agreement?"[6] Wife's attorney responded that the court did not specifically state that the parties were divorced. Husband's attorney responded that he did not know if the trial court stated that "the divorce is granted" but did believe that the court stated that it "approve[d] the divorce."

At the conclusion of the February 2006 hearing, the trial court made the following statements and findings from the bench:

> The Court has carefully considered the testimony of the witnesses and has paid particular attention to the witnesses as they testified, including [Wife], be she identified as Edwinna Blackburn or Edwinna Swafford. The Court has also considered the various exhibits that have been introduced, the trial brief that was filed by [Husband's attorney] on behalf of the decedent, [Husband], ... and the opinions that were submitted to me by [Wife's trial attorney] on behalf of [Wife].
>
> And I think what we have got here is a situation where, if I rule for [Wife] in this case, I have, in effect, taken the position that [Wife] ... can be who she wants when she wants when it's advantageous for her.
>
> ...
>
> It's the Court's right and the Court's duty to make any record for any proceedings or record of that proceeding

---

**6.** We infer from the trial judge's questions to parties' counsel that he does not recollect whether he approved the announcement made before him or whether he announced, during the June 2005 hearing, that the parties were divorced.

speak the truth and it's the Court's obligation to discharge that duty. And the most important thing, if the Court discharges that duty, is to make sure that that document or that record, in fact, speaks the truth. And that's what we are after here in a court of law. We put people under oath, we conduct extensive proceedings, and we do that to try to find what the truth is.

And the truth in this case, this Court finds, the truth in this case was that these parties were before me on June 6th, said they wanted a divorce, I granted them a divorce, I granted them a divorce at that time, and intended that the parties be divorced at that time. The decree was then prepared and, for whatever reason, ... that decree was never presented to the Court.

So in order for this Court to make these proceedings truthfully reveal what occurred and to make these proceedings accurate, it's incumbent upon this Court to discharge its duty, enter the decree *nunc pro tunc,* and I elect to exercise my discretion and I elect to discharge my duty and I elect to enter the decree *nunc pro tunc.* These parties were divorced on June the 6th, my order is that they were divorced on June the 6th, and the decree will then be entered *nunc pro tunc* as of June the 6th.

The trial court subsequently entered an order, stating that the judgment "previously submitted shall be entered *nunc pro tunc* to June 6th, 2005, and that the parties were divorced as of that date."

Wife appealed to the Court of Appeals, which affirmed the trial court. We granted Wife's application for permission to appeal and now address whether the trial court erred in entering a divorce decree *nunc pro tunc.*

### Standard of Review

When dealing with a trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R.App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt,* 81 S.W.3d 741, 744–45 (Tenn.2002).

### Analysis

It is a well-settled principle of law that a pending divorce action, being purely personal in nature, abates upon the death of one of the parties. *Swan v. Harrison,* 42 Tenn. (2 Cold.) 534, 536–40 (1865); *see Owens v. Sims,* 43 Tenn. (3 Cold.) 544, 549 (1866) (stating that wife could not appear and defend action for divorce after death of husband); *Steele v. Steele,* 757 S.W.2d 340, 342 (Tenn.Ct.App. 1988) (stating "if an action for a divorce is commenced, and one of the parties dies thereafter, but before the entry of the final decree, the action abates"). If, however, the court has entered a final divorce decree, the subsequent death of a spouse does not affect the decree. *See, e.g., Vessels v. Vessels,* 530 S.W.2d 71, 71 (Tenn. 1975). Accordingly, at issue in this appeal is whether the trial court granted the parties a divorce on June 6, 2005, and/or whether a final decree was deemed to be entered, such that the parties' divorce proceeding was no longer pending on the day Husband died.

Before this Court, Wife argues that the divorce complaint filed against Husband abated on the date of Husband's death because the trial court never entered a final divorce decree. As Wife asserts, unlike other cases where a divorce decree

was entered *nunc pro tunc*, in this instance the trial court did not make any written notations on the "judge's docket," [7] on the cover of the court file,[8] or on the trial docket,[9] suggesting that a divorce had been granted. Conversely, Husband's attorney, on behalf of decedent Husband, argues that the trial court "clearly expressed its intent that the divorce was granted on June 6, 2005" and as such, the trial court's decree *nunc pro tunc* should be upheld. In support of this argument, Husband's attorney asserts that Wife's actions after the June 6, 2005 hearing indicate that Wife believed that the trial court had granted her a divorce.[10] Upon review of the record and relevant case law, we agree with Wife and hold that Wife's divorce complaint had not been resolved as of the date of Husband's death, that Wife's divorce complaint, therefore, abated on that day, and as such, the trial court erred in entering a divorce decree *nunc pro tunc*.

### Grounds for Divorce

When filing a complaint for divorce, the complaint must allege the grounds for divorce as enumerated in Tennessee Code Annotated section 36–4–101. Tenn.Code Ann. § 36–4–106 (2005). In this case, in her complaint, Wife alleged that she should be granted a divorce on the grounds of irreconcilable differences between the parties, *id.* § 36–4–101(14), or,

in the alternative, Husband's inappropriate marital conduct, *id.* § 36–4–101(11).

 Had the trial court granted Wife a divorce on the ground of irreconcilable differences, it would be clear from the record that no divorce decree could have been properly entered on June 6, 2005, and therefore, the trial court's subsequent entry of the divorce decree *nunc pro tunc* to June 6, 2005, would have been fruitless. Pursuant to section 36–4–103(b), "[n]o divorce shall be granted on the ground of irreconcilable differences unless the court affirmatively finds in its decree that the parties have made adequate and sufficient provision by *written* agreement." (Emphasis added). In this instance, the record is void of any such written marital dissolution agreement by the parties. Without such an agreement, the trial court lacks the authority to grant a divorce. *See Earls v. Earls*, 42 S.W.3d 877, 897 (Tenn.Ct.App. 2000) (stating that "[n]o divorce can be granted on grounds of irreconcilable differences without a sworn agreement of the parties settling all matters of . . . property with such agreement approved by the court").

In this case, however, and in spite of the grounds alleged in the complaint, it does not appear that the parties, on June 6, 2005, asked for the divorce to be granted pursuant to Tennessee Code Annotated section 36–4–103. Instead, the trial court found that the parties had stipulated to grounds for divorce on June 6, 2005,[11] and

---

7. *Rush v. Rush*, 97 Tenn. 279, 37 S.W. 13, 14 (1896).

8. *Vessels*, 530 S.W.2d at 71.

9. *McCown v. Quillin*, 48 Tenn.App. 162, 344 S.W.2d 576, 579 (1960).

10. Husband's attorney does not explain how Husband can be deemed to have thought his divorce was final when Husband's attorney never signed or filed the order.

11. During the February 2006 hearing, the trial court stated, "[the order prepared by Wife's attorney] reflects . . . that these parties appeared before me [on June 6, 2005, . . . [and] stipulated grounds for divorce. And that stipulation was that each party committed some act which would give the other grounds for divorce."

as such, the trial court, "upon stipulation to or proof of any ground for divorce pursuant to [section] 36–4–101, [may] grant a divorce . . . or . . . declare the parties to be divorced." Tenn.Code Ann. § 36–4–129(b) (2005).[12] Accordingly, it is under section 36–4–129 that we analyze whether the parties were divorced after the June 6, 2005 hearing, such that the trial court correctly entered a divorce decree *nunc pro tunc.*

### Entry of Judgment

■ Prior to the adoption of the Tennessee Rules of Civil Procedure, a judgment had to "be reduced to writing in order to be valid." *Broadway Motor Co. v. Pub. Fire Ins. Co.,* 12 Tenn.App. 278, 280 (1930). As this Court noted, "[t]he action of a court is not complete nor effective for any purpose until a record thereof has been spread upon the minutes of the court, and the minutes duly signed or authenticated." *Mass. Mut. Life Ins. v. Implement & Vehicle Co.,* 138 Tenn. 28, 195 S.W. 762, 765 (1917); *see Broadway Motor,* 12 Tenn.App. at 280 (stating that a judgment "is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court"). This rule, requiring a judgment be reduced to writing, survived the adoption of Tennessee Rule of Civil Procedure 58. *Sparkle Laundry & Cleaners, Inc. v. Kelton,* 595 S.W.2d 88, 93 (Tenn.Ct.App. 1979).

Tennessee Rule of Civil Procedure 58 states, in pertinent part:

Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:

(1) the signatures of the judge and all parties or counsel, or

(2) the signatures of the judge and one party of counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or

(3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel.

■ The purpose of Rule 58 "is to insure that a party is aware of the existence of a final, appealable judgment in a lawsuit in which he is involved." *DeLong v. Vanderbilt Univ.,* 186 S.W.3d 506, 510 (Tenn.Ct.App.2005), *app. perm. appeal denied* (Tenn. Dec. 19, 2005); *see* Tenn. R. Civ. P. 58, advisory comm'n cmt. (stating that Rule 58 "is designed to make uniform across the State the procedure for the entry of judgment and to make certain the effective date of the judgment"). The failure to adhere to the requirements set forth in Rule 58 prevents a court's order or judgment from becoming effective. *DeLong,* 186 S.W.3d at 509. Under certain circumstances however, remedies are available to effectuate a defective order or judgment.

### Nunc Pro Tunc [13]

When there has been an error in the entry of judgment and a failure to meet

**12.** The complaint was never amended to reflect that Wife was entitled to a divorce pursuant to Tennessee Code Annotated section 36–4–129, and the record does not reflect whether this issue was addressed at the June 2005 hearing. And, while the original order prepared by Wife's counsel asserts that the parties agreed to a divorce on stipulated grounds, the order does not suggest that Wife's complaint was amended to include this ground. However, the parties do not dispute the trial court's grant of divorce pursuant to section 36–4–129.

**13.** *Nunc pro tunc,* a Latin term, means "now for then." *Black's Law Dictionary,* 964 (5th ed.1979).

the requirements of Tennessee Rule of Civil Procedure 58, a party may move for relief under Tennessee Rule of Civil Procedure 60, which provides for the correction of a judgment or order containing clerical mistakes or errors arising from oversight or omission. Tenn. R. Civ. P. 60.01. Although Rule 60 does not specifically provide a remedy for circumstances where by mistake a court's judgment was not entered on the date the judge intended, under certain circumstances, the failure to enter an intended judgment may be remedied by an entry of the judgment *nunc pro tunc*.[14] *See Vessels*, 530 S.W.2d at 72.

■■■■■■ The error justifying a *nunc pro tunc* entry must have been due to the inadvertence or mistake of the court and not counsel. *Cantrell v. Humana of Tenn., Inc.*, 617 S.W.2d 901, 902 (Tenn.Ct.

App.1981) (quoting *Black's Law Dictionary* 1267 (3d ed.1933)). Moreover, an entry of a judgment *nunc pro tunc* should only be granted when it can be shown by clear and convincing evidence that the judgment sought is the one previously announced. *Rush v. Rush*, 97 Tenn. 279, 37 S.W. 13, 14 (1896). It is not enough that the parties believe that a judgment has been filed, there must be clear and convincing evidence that the court announced its judgment, and, but for clerical error or mistake, the judgment was not filed for entry. *See Zeitlin v. Zeitlin*, 544 S.W.2d 103, 106 (Tenn.Ct.App.1976). As this Court has previously stated, "[i]t is ... clear that a party whose rights are injuriously affected by a clerical omission to extend upon the record a judgment of the Court regularly pronounced may present the matter to the Court, and upon a proper showing have the judgment entered *nunc*

---

**14.** Wife argues that the 1993 amendment to Rule 58 abrogated the trial court's inherent authority to enter a divorce decree *nunc pro tunc*. Prior to the 1993 amendment, Rule 58 stated, in pertinent part:

> The clerk shall note the entry of the judgment and date of such entry thereof upon the civil docket and upon the face of the judgment and shall promptly copy all judgments of the court upon the official minutes, but all judgments shall be effective upon entry of same as hereinbefore provided, *unless otherwise ordered by the court.*

Tenn. R. Civ. P. 58.02 (1991) (emphasis added).

The 1993 amendment consolidated former Rules 58.01, 58.02, and 58.03 into one Rule 58. In so doing, the sentence containing the clause "unless otherwise ordered by the court" was removed. Accordingly, Wife argues that it was the intent of this Court, in removing this clause, to no longer allow trial courts to enter decrees *nunc pro tunc*. We respectfully disagree.

In the March 10, 1993 Order amending Rule 58, this Court included an Advisory Commission Comment explaining that the Rule was amended to change the holding in *Yearout v. Trusty*, 684 S.W.2d 612 (Tenn. 1984). Nothing in *Yearout* addressed or af-

fected the trial court's inherent authority to enter a decree *nunc pro tunc*, and as such, the change to the Rule was not intended to address this authority.

Subsequent to the 1993 Amendment, in 2003, the Court concluded that an Advisory Commission Comment to Rule 58 was obsolete and should be removed. The Court went on to ask the Advisory Commission on the Rules of Practice and Procedure to "undertake a review of the various rules of procedure and to recommend the removal of any other Advisory Commission Comments that are obsolete or otherwise inconsistent with later amendments to the various rules." Importantly, the Advisory Commission submitted, and this Court adopted, a comment which states, in pertinent part: "Under this Rule, *unless otherwise ordered by the court*, the effective date of a judgment is the date of its filing with the clerk after being signed by the judge." (Emphasis added). It was and is this Court's intent that the clause "unless otherwise ordered by the court" allows the court to select a date other than the date the judgment is filed with the clerk. Therefore, if the requirements needed to properly enter a decree *nunc pro tunc* are satisfied, Rule 58, as amended, has not abrogated the trial court's right and duty to do so.

*pro tunc.*" *Rush,* 37 S.W. at 14. "All courts have the right, and it is their duty, to make their records speak the truth, and a court, therefore, in a proper case, of its own motion, may order a *nunc pro tunc* entry to be made...."[15] *Id.*

This Court and the intermediate appellate court have previously addressed the circumstances in which a trial court may enter a divorce decree *nunc pro tunc.* In *Swan v. Harrison,* 42 Tenn. (2 Cold.) 534 (1865), this Court affirmed the chancery court's refusal to enter a divorce decree *nunc pro tunc.* In *Swan,* prior to the chancery court entering a final judgment, the husband died. Prior to husband's death, however, a divorce agreement had been reached between the parties.[16] Wife filed a bill to revive her divorce complaint against her husband. When the chancery court dismissed the bill, wife appealed, arguing that the chancery court should have entered a divorce decree *nunc pro tunc.*

In affirming the chancery court, this Court stated: "[b]ut no case, we apprehend, can be found, where a Court, either in England or America, has gone so far as to order a decree which had never been announced." *Id.* at 538. This Court noted that no decree was entered by the chancery court and as such, the chancery court, after the death of the husband, could not enter a divorce decree *nunc pro tunc. Id.* at 538–39.

In *Rush v. Rush,* 97 Tenn. 279, 37 S.W. 13 (1896), husband filed a divorce complaint against wife. Following a hearing, the trial court found that husband was entitled to a divorce and "that thereupon a note of this judgment was made on the Judge's docket by him, but the judgment had never been entered or extended by the Clerk on the minute or record-book of the court." *Id.* at 14. Thereafter, husband, representing himself as unmarried, conveyed certain real property to a third party and later died. Wife, claiming to be husband's widow, sought to "set up a homestead right in said property." *Id.* The purchaser of the property filed a petition requesting that the trial court enter a divorce decree between husband and wife *nunc pro tunc.* The trial court granted the purchaser's request. Wife appealed the trial court's decision to this Court.

Upon review of the record, this Court found that the proffered proof evidenced the fact that the trial court intended the parties to be divorced as of the day of the hearing. In making this determination, the Court relied upon the fact that on the trial docket, "in a column left for the Judge's memoranda, and at a place opposite the entry of a cause styled '*James Rush v. Chaney Rush*' was found noted the following: 'Divorce for plaintiff.'" *Id.*[17]

---

**15.** We caution, however, that "[i]f feasible, the best method of announcing a decision is by signed order filed with the Clerk." *Steele,* 757 S.W.2d at 346. In failing to reduce a divorce agreement to a written and signed document, parties run the risk of additional litigation, unresolved divorce proceedings, and anger and frustration among clients and their attorneys.

**16.** As a "consequence of the feeble health of the Chancellor," three referees were selected to hear and decide the wife's divorce complaint and husband's cross-complaint, and "their decision, or [that of] a majority thereof,

was to be entered as the decree of the Chancellor." *Swan,* 42 Tenn. (2 Cold.) at 536. Prior to husband's death, two referees "had agreed that [wife] was entitled to a divorce." *Id.* However, "before the day upon which the opinion [of the two referees] was to be delivered," husband died. *Id.*

**17.** We note that both *Swan* and *Rush* were decided prior to the adoption of Tennessee Rule of Civil Procedure 58.02, now Rule 58, which was promulgated in 1971. However, as previously noted, Rule 58 has not eliminated a trial court's inherent power to enter a judgment or order *nunc pro tunc.*

In *Vessels v. Vessels*, 530 S.W.2d 71 (Tenn.1975), the principal issue raised on appeal was whether a divorce decree announced by the trial court on June 21, 1974, but not entered until August 28, 1974, two hours after the death of one of the parties, was valid. After hearing testimony in open court, including testimony that the parties had agreed on a property settlement, the trial court awarded wife a divorce. "No entry was made in the minutes of the court, but the trial judge wrote 'divorce granted, property awarded,'" and then signed his name and the date on the cover of the court file. *Id.* at 71.

Subsequently, wife's attorney sent a proposed divorce decree to husband's counsel for approval. Husband's counsel returned the proposed divorce decree to wife's attorney, requesting that changes be made to comport with the agreement of the parties and the notes in the trial judge's file. Plaintiff's attorney incorporated all the suggested changes and additions and forwarded a second proposed divorce decree to husband's attorney for approval.

Two hours before the trial judge signed the divorce decree approved by both parties, husband died. After realizing that the final divorce decree was entered after husband's death, husband's attorney moved that the decree be entered *nunc pro tunc* to make it speak as of the date the divorce decree was announced in court. After a hearing on the motion, the trial court "ruled that the motion was not well taken and should be overruled as not necessary since the court made a notation on the file of the case that the divorce was granted and the property was awarded on [June 21, 1974]." *Id.* at 72. Wife appealed this decision.

On appeal, this Court noted that:

[although] there is no order specifically stating the decree of divorce is to be effective at a date other than the date the decree was filed with the clerk after being signed by the trial judge ... there is an order in the record *clearly* indicating the trial judge intended the divorce to be effective as of the date it was pronounced and that he believed he had done everything necessary to make the decree effective as of that date in entering "a notation on the file of the case that the divorce was granted...." *Cf. Rush*, 37 S.W. at 14 [ (affirming an entry of *nunc pro tunc* order where trial court noted on its docket "divorce for plaintiff")]; *McCown v. Quillin*, 48 Tenn. App. 162, 344 S.W.2d 576, 579 (1960) [ (affirming an entry of order *nunc pro tunc* where trial court's decision was written on clerk's docket after court announced from the bench that the parties were divorced) ].

*Id.* (emphasis added). Based on the trial court's intent, this Court held that the trial court had effectively entered a divorce decree on June 21, 1974. *Id.*

In addition to this Court's jurisprudence on the issue, the Court of Appeals has addressed this issue on several occasions. In *McCown v. Quillin*, 48 Tenn.App. 162, 344 S.W.2d 576 (1960), the issue raised was whether husband's first wife was legally the widow of husband on November 5, 1954, the day husband died. In the case, a divorce hearing for husband and first wife was held on June 9, 1953, at which time the trial judge announced his decision, and the decision was noted on the clerk's docket. That same afternoon, husband remarried. The divorce decree was not entered on the minutes of the court until June 17, nine days after husband's second marriage. Thereafter, on November 5, 1953, husband died. Subsequently, the divorce decree entered June 17 was re-entered June 9, 1953, *nunc pro tunc*.

Husband's second wife, wanting to claim a year's support, dower, and homestead

rights as widow of husband, filed a petition with the probate court. Husband's first wife responded to second wife's petition by arguing that she, and not second wife, was actually husband's widow. In support of her argument, first wife alleged that husband's marriage to second wife on June 9, 1953, was invalid because his divorce from first wife did not become effective until June 17, 1953.

The Court of Appeals, in declaring that second wife was the legal widow of husband, stated that the trial court's divorce decree "was effective from the time [it] was rendered on the morning of June 9, 1953, rather than from the time when same was entered on the Minutes June 17, 1953." *Id.* at 579. In support of this holding, the court noted that *"[u]ndisputed proof* [established] that on the morning of June 9, 1953, [the trial court] granted [first wife] a decree of absolute divorce from [husband], and that the rendition of such decree was noted on the trial docket of the Court by the Clerk of that Court." *Id.* (emphasis added). Relying on this Court's holding in *Rush,* the Court of Appeals held that "the Clerk's entry on the Trial Docket . . . constituted, in our opinion, evidence justifying the entry of the *nunc pro tunc* decree." *Id.* at 582.

Most recently, in *Steele v. Steele,* 757 S.W.2d 340 (Tenn.Ct.App.1988),[18] wife appealed the trial court's judgment granting husband's divorce complaint after husband's death. After hearings were held on July 3 and 9, 1987, the trial court took the divorce matter under advisement. On August 28, 1987, the trial court wrote a letter to the clerk, which stated, "[t]his case was tried on July 3, 1987, and the attorneys made their arguments on July 9, 1987. After considering all the evidence[,] . . . I

have decided the following. The divorce should be granted to [husband]." The trial court continued the letter by writing, "I am mailing a copy of this letter to [parties' attorneys], with the request that [husband's attorney] prepare a judgment in accordance with this letter." *Id.* at 340–41. The trial court's letter was not marked as filed by the clerk, and it bears no evidence of when, if ever, the letter was received or filed by the clerk. *Id.* at 341.

On September 17, 1987, prior to entry of judgment, husband died. On November 5, 1987, a judgment was entered "in accordance with the letter of August 28, 1987." *Id.* Wife appealed the trial court's order, alleging that the order was void because it was entered after the husband's death. The Court of Appeals agreed with wife, finding that no judgment had been entered prior to the death of husband, and as such, husband's divorce complaint was abated by his untimely death. *Id.* at 346.

The *Steele* court, in distinguishing its case from *Vessels,* noted:

the [*Vessels*' trial court] announced [its] decision in open court and made a signed, dated, notation on the court file, all before the death of the spouse. In the present case, no decision was announced in open court; but, some three weeks after the trial, the Trial Judge wrote and signed a letter to the Trial Clerk with copies to counsel announcing his decision. . . . There is no evidence of when, if ever, the letter was received by the Trial Clerk. . . . There is no other evidence that [the judge's letter] ever became part of the records of the Trial Clerk.

*Id.* at 345–46. Moreover, the *Steele* court stated that "[i]n *Vessels* there was a clear

---

18. *Steele* is the most recent reported opinion of the Court of Appeals addressing *nunc pro* *tunc* divorce decrees.

and recorded indication of the intent of the Trial Judge that his announced judgment be effective on a date certain, prior to the death of the spouse." *Id.* at 346. The *Steele* court found this to be distinguishable, noting that, in the case at bar, "there [was] no recorded indication of the intended effective date of the judgment," and in fact, the trial court noted in its letter to parties' counsel that "[its] decision needed to be formalized by entry of judgment on the minutes of the Court." *Id.* Finally, the *Steele* court opined:

> If feasible, the best method of announcing a decision is by signed order filed with the Clerk and distributed to counsel or the parties. It is proper, of course, to file a memorandum opinion or other pertinent document such as a finding of facts. Such a document should clearly indicate in its text whether it is intended to serve as a judgment and be effective upon filing, or whether it is informational only and is to take effect when implemented by a judgment.

*Id.*

 Upon review of Tennessee's *nunc pro tunc* jurisprudence [19] in conjunction with Tennessee Rule of Civil Procedure 58, we hold that the trial court erred in entering the parties' divorce decree *nunc pro tunc.* We conclude that, as a prerequisite to an entry *nunc pro tunc,* there generally must exist some written notation or memorandum [20] indicating the intent of the trial court to enter the judgment on the earlier date. *See, e.g., Gillespie v. Martin,* 172 Tenn. 28, 109 S.W.2d 93, 94 (1937) (stating that "[t]he general rule is that to justify a *nunc pro tunc* order there must exist some memorandum or notation found among the papers or books of the presiding judge, and a *nunc pro tunc* order will not be valid unless there is some such memorandum showing what judgment or order was actually made and these jurisdictional facts recited"). Unlike in *Rush,* 37 S.W. at 14, where the trial court wrote on the docket, "divorce for plaintiff," or in *Vessels,* 530 S.W.2d at 71, where the judge wrote "divorce granted" on the cover of the court file, or in *McCown,* 344 S.W.2d at 579, where the decision of the court was noted on the clerk's docket after the court announced the parties divorced in open court, the record in the case *sub judice* is void of any such notation.[21] Accordingly, we find that

**19.** Several unreported cases have also addressed the entry of a divorce decree *nunc pro tunc. See Bradley v. Bradley,* No. 957, 1990 WL 131404, at *1 (Tenn.Ct.App. Sept.14, 1990) (remanding the case back to the trial court, the Court of Appeals stated that the trial court should enter the divorce decree *nunc pro tunc* if the trial court "intended [the judgment announced] to be effective as of the date of the hearing" but that if the trial court "did not intend for the divorce to be effective as of the date of the hearing, or [the court] has no present recollection of [its] intent, [it] should re-enter an order dismissing the case as abated"); *Littrell by Davis v. Littrell,* No. 1152, 1988 WL 86522, at *1–4 (Tenn.Ct.App. Aug.22, 1988) *no app. perm. appeal filed* (affirming the trial court's entry of a divorce decree where it was clear from the court reporter's transcriptions of the hearing that the trial court intended the parties to be divorced on the day of the hearing).

**20.** Because the facts in this case do not necessitate it, we do not consider whether other methods of information capture, such as a court reporter's transcription or an audio or video recording, would satisfy our pronouncement that there generally must exist some written notation or memorandum to support an entry of judgment *nunc pro tunc. Cf. Littrell,* 1988 WL 86522, at *4.

**21.** In the two previous Supreme Court cases where we held that the trial court correctly entered a divorce decree *nunc pro tunc,* the trial judge wrote either "divorce granted" or "divorce for plaintiff" on the court's file or docket. In these instances, the only question raised was whether the trial court granted the

the present case more closely resembles *Swan* and *Steele*. In these cases, the party seeking an entry of divorce *nunc pro tunc* did not carry the burden of proving by clear and convincing evidence that the trial court had announced a final divorce decree prior to the death of a party because there was no written notation suggesting that the court intended for the parties to be divorced on a previous date. *Swan*, 42 Tenn. at 538–39; *Steele*, 757 S.W.2d at 346.

**▮** Contrary to Husband's argument, it is irrelevant that Wife believed she was divorced following the June 6, 2005 hearing. The error justifying a *nunc pro tunc* entry must have been due to the inadvertence or mistake of the court, not the attorneys or parties. *See Cantrell*, 617 S.W.2d at 902.[22] Therefore, when determining whether it should enter an order *nunc pro tunc*, the trial court should generally refer only to written notations or memoranda indicating the court's intent to enter the judgment on a specified earlier date. *Gillespie*, 109 S.W.2d at 94; *see also Steele*, 757 S.W.2d at 346 (noting that an

entry of divorce *nunc pro tunc* was improper because the date upon which the trial court intended to grant the parties' divorce was uncertain). In this case, the trial court did not appear to have any memory of its intention. In the absence of any written notation, the judge asked parties' counsel whether they remembered the court stating that the parties were divorced, and explicitly stated that it "carefully considered the testimony of the witnesses and has paid particular attention to the witnesses as they testified . . . [and has] considered the various exhibits that have been introduced" in determining that the court intended for a divorce decree to be entered on June 6, 2005.[23] In relying on these irrelevant offers of proof to determine whether the court had previously announced a divorce decree, the trial court erred.

**▮** In this case, it is clearly Husband's subsequent death before the entry of a final order that caused the parties to focus on the events of June 6, 2005. Although the trial court has the inherent

parties a divorce, and as such, the courts' notations clearly and convincingly proved that a divorce was intended by the trial court. Given only the two possibilities, that the parties are divorced or not divorced, the trial courts' notations permitted no doubt as to the trial courts' intent. Importantly, in neither of these cases was a property-related question raised, i.e., whether the trial court had previously "considered" and "sanctioned" the parties' property settlement agreement. *See Ledbetter v. Ledbetter*, 163 S.W.3d 681, 685 (Tenn. 2005) (holding that "because the terms of the oral agreement were not made or announced in open court and on the record, the court neither considered nor sanctioned the agreement," and as such, the agreement was not enforceable). Given the detail and length of most property settlement agreements, this Court is not suggesting that a court's mere notation "property settlement approved" or some similar verbiage on some document other than the property settlement agreement

itself would be enough to allow a trial court to enter later a complete property settlement agreement *nunc pro tunc*. Without some specific memorialization of the details of a property settlement agreement, it seems unlikely that a later attempt by the moving party to enter a decree dividing property, *nunc pro tunc*, would be effective.

22. Here, it was the failure of Husband's attorney to sign and file the judgment order that resulted in no written order being entered prior to Husband's untimely death.

23. Moreover, the Court of Appeals noted in the opinion below, "[i]n this case, there is no writing reflecting definitively the intention of the trial court. The trial court in the instant case held a hearing to determine whether the parties were divorced prior to Husband's death." *Blackburn v. Blackburn*, E2006–00753–COA–R3–CV, 2007 WL 2437978, at *7 (Tenn.Ct.App. Aug.29, 2007).

authority to enter a divorce decree *nunc pro tunc* to amend or rectify the record, a *nunc pro tunc* decree may not be entered in an attempt to make the record reflect what *should have happened,* rather than what actually did occur. *In re Marriage of Hardt,* 39 Wash.App. 493, 693 P.2d 1386, 1389 (1985). Thus, where a court has not in fact rendered a divorce decree with some written evidence of its decision, but later decides that a divorce should be granted, a court cannot order that the decree be effective *nunc pro tunc* to a prior date. *See Heil v. Rogers,* 329 S.W.2d 388, 391 (Mo.Ct.App.1959). It is our opinion that the record in this instance shows that, in the absence of any written notations or memoranda, the trial court attempted to make the record reflect what one party wished had happened, and not what actually did occur, during the June 6, 2005 hearing.

### *Conclusion*

Because we find no appropriate confirmation that the trial court granted the parties a divorce during the June 6, 2005 hearing, we find that the parties' divorce proceeding abated at the time of Husband's death. We therefore hold that the trial court erred in entering a divorce decree after Husband's death *nunc pro tunc* to June 6, 2005. Accordingly, we reverse the judgment of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to Husband's estate, for which execution may issue if necessary.