IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 10, 2015 Session

## DAWN NOLES MARTIN (GORHAM) ET AL. v. MATTHEW KENDALL MARTIN ET AL.

**Appeal from the Chancery Court for Carroll County**
**No. 20-DR-147      Paul G. Summers, Judge**

**No. W2014-01007-COA-R3-CV – Filed May 20, 2015**

This is an appeal from the trial court's order modifying child support and setting arrearage. The trial court's calculation of child support arrearage includes a set off for credits given the Appellee Father for necessaries provided. The trial court also found that Father was responsible for one-half of the children's private school tuition for the three year period prior to Appellant Mother filing her petition for reimbursement of those expenses. The trial court further found that the parties had sufficient income to continue sending their children to private school and that each party should be responsible for one-half of the costs of the private school tuition and fees. Mother appeals. We reverse in part, vacate in part, and remand for a fresh determination of child support arrearages from April 2007 forward, and sufficient findings on the issue of wage assignment in accordance with this opinion.

Tenn. R. App. P. 3 Appeal as of Right**; Judgment of the trial court is Affirmed in Part; Vacated in Part and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, J., and BRANDON O. GIBSON, J., joined.

Thomas C. Gorham, Nashville, Tennessee, for the appellant, Dawn Noles Martin (Gorham)

Steven L. West, Huntingdon, Tennessee, for the appellee, Matthew Kendall Martin

**OPINION**

## I.      Factual History and Procedure

Appellant Dawn Noles Martin ("Mother") was divorced from Appellee Matthew

Kendall Martin ("Father") by a Divorce Judgment entered on October 9, 2000, in the Chancery Court of Carroll County. At the time of divorce, the parties had a son, age four, and a daughter, age two. At the time of the modification hearing in December 2013, which is the subject of this appeal, the parties' son and daughter were 17 and 15, respectively. The Divorce Judgment set Father's child support obligation at

> $350.00 per month . . . being paid as follows, namely [Father] shall pay [Mother's] car payment in the amount of $278.00 per month and shall pay directly to the [Mother] the sum of $50.00 per week beginning October 13, 2000 and continuing each and every week thereafter until [Mother's] car is paid off, at which time the [Father] shall pay unto the [Mother] the sum of $87.50 per week pending further orders of the court.

Both of the payment options listed above created a payment schedule in excess of the court ordered child support amount of $350.00 per month. The parties acknowledged that Father paid child support through September 2003. We will analyze Father's child support obligation based on the court ordered amount of $350.00 per month rather than the schedule of payments outlined in the Divorce Judgment.

In contradiction of the Divorce Judgment, the parties exercised equal parenting time, alternating parenting time on a weekly basis. Accordingly, the parties mutually agreed to cut Father's child support obligation in half because they were equally dividing parenting time, but never obtained a court order approving the modification.

In December 2000, Mother moved to Nashville. In August 2001, the parties' son started school and moved in with Father. The parties' daughter continued to live primarily with Mother. The parties still alternated weekends so that the children spent every weekend together with one of the parents. This parenting schedule was maintained until December 2009. From October 2003 through December 2009, Father paid no child support, nor did he file a petition to modify support.

In December 2009, the parties' son moved to Nashville and began living with Mother. The parties agreed to send their son to a private high school. The testimony of the parties conflicted as to what child support payments were actually made by Father in 2010. Upon cross examination, Father admitted he had no receipts or proof of child support payments for the year 2010. In January 2011, Father began paying child support via payroll deduction in the amount of $200 every two weeks, which is the equivalent of $433.33 per month. Mother testified that the money paid by Father above the original child support amount was for the children's private school tuition. Father argued that the additional funds were given to Mother in order to "help out," but that they were not

designated for tuition.

Mother submitted a ledger of child support payments from October 2003 through December 2012, which included interest on the unpaid amounts. Mother's ledger indicated that Father should have paid $43,050 in child support but paid only $13,700 plus an additional $3,600 in tuition. Mother's ledger calculated the total amount owed by Father to be $52,956.38, which consisted of $29,350.00 in unpaid support plus interest owed in the amount of $23,606.38.

On April 1, 2013, Mother filed a petition for contempt, to modify the marital dissolution agreement[1] and child support, and to reimburse for extraordinary expenses. Thereafter, Father filed a counter-petition alleging that he made child support payments directly to the parties' son in the amount of $725 per month from August 2001 through December 2009. Mother testified that she never received any of these payments. Father alleged that direct payments to the parties' son were for his housing, food, clothing, transportation, healthcare, and education.

The trial took place on December 13, 2013, and a final order was entered on January 29, 2014. Both parties filed motions to alter or amend the trial court's final order. A hearing was held on March 5, 2014, to address the motions to amend and clarify the prior order of the court. An amended final order (which was actually an amended parenting plan) was entered on April 17, 2014. In its order, the trial court gave Father a $250 monthly credit for necessaries during the 76 month period when the parties' son lived primarily with Father. This finding resulted in a child support arrearage of $100 per month accruing interest at 12% annually from the due date. Based on this finding, the trial court awarded Mother child support arrears in the amount of $23,983.31 including medical expenses of $985.03. The trial court ordered Father to pay the arrears at a rate of $468.88 per month.

Father was also ordered to pay 50% of the private school tuition, plus 50% of any fees and meal ticket, if required. Additionally, the trial court ordered the parties to share equally in any additional school related-expenses. However, the trial court did not specifically indicate what it meant by the term "school related expenses." The trial court did expressly find that neither parent was "financially able to incur the expense [of private school education] alone, but relied upon the support and representations of the other parent." Mother was awarded a judgment in the amount of $17,204.25 for past

---

[1] We note that, although Mother's petition claims that the parties were divorced pursuant to a Final Decree of Divorce that incorporated a Marital Dissolution Agreement, there is neither a Martial Dissolution Agreement nor a Final Decree of Divorce in the record. However, the record does contain a Divorce Judgment, in which the division of marital property and the pertinent information regarding the parenting schedule and child support obligation is delineated.

tuition. This award was based in contract due to the fact that Father signed the school contracts agreeing to be jointly and severally liable with Mother for tuition. The trial court found that this judgment shall not be considered as child support for collection purposes. The trial court granted Father's request for an injunction prohibiting child support to be paid through the Tennessee Child Support Receipting Unit by wage assignment. With regard to the parties' ability to work together, the trial court stated:

> The maxim that Equity looks on that as done which ought to be done applies. It appears to this court that the parents preferred to work out what they saw as an equitable relationship for the 76 month period ending in January 2010 at which time the son returned to live with his mother. The court approves of the couple's ability to work out an equitable arrangement for the 76 months. . . .

The contempt petitions of both parties were denied, and each party was ordered to pay their own attorney fees. Court costs were equally divided between the parties.

## II.    Issues

Mother presents the following issues for review in this appeal:

1. Did the Trial Court err in granting Father a credit against child support arrears for providing necessaries to one of the minor children for a period of 76 months?

2. Did the Trial Court err in ordering father to pay an upward deviation for private school tuition, and then allowing Father to pay the school directly rather than pay his portion to Mother?

3. Did the trial court err in finding the retroactive tuition awarded for the period of time after the filing of Mother's petition to be contractual rather than child support?

4. Did the trial court err in refusing Mother's request that child support be paid through the Tennessee Child Support Receipting Unit via wage assignment, and granting a permanent injunction against mother seeking child support arrears to be paid through the Tennessee Child Support Receipting Unit?

Father presents three issues for review in this appeal:

1. Did the trial court err in awarding Mother any child support arrearage?

2. Did the trial court err in ordering that the Father pay an upward deviation for private school tuition?

3. Did the trial court err in ordering the Father to pay retroactive private school tuition?

## III. Standard of Review

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995). Because child support retains an element of discretion, we review these decisions based upon the deferential "abuse of discretion" standard. *Richardson v. Spanos*, 189 S.W. 3d 720, 725 (Tenn. Ct. App. 2005). A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case "on a clearly erroneous assessment of the evidence." *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 335 (Tenn. 2010) citing *Lee Medical, Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W. 2d 652, 661 (Tenn. 1996).

## IV. Analysis

### A. Calculation of Child Support Arrearage

To begin our analysis, we first address the issue of whether the trial court erred in calculating the child support arrearage. The trial court's order found that Father owed a child support arrearage in the amount of $23,983.31, which included medical expenses of $985.03 and interest on all unpaid amounts at a statutory rate of 12% interest. The trial court ordered Father to make monthly payments of $468.88 toward the arrearage until the amount was paid in full.

With regard to necessaries provided on behalf of the children, the trial court found that "expenses for child care necessities were incurred for both parents for the 76 month

period ending in January 2010." Citing this Court's opinion in ***Netherton v. Netherton***, No. 01-A-01-9208-PB00323, 1993 WL 49556 (Tenn. Ct. App. Feb. 26, 1993), the trial court determined that "[i]t is equitable for this Court to consider necessary child care expenses and give credit for such expenditures against [a] child support arrearage." The trial court granted Father a credit of $250.00 per month for each of the 76 months that the parties' son lived primarily with Father. The trial court found a resulting balance of $100 per month, which accrued interest at 12% from the due date. Father argues that the trial court erred in failing to give him credit in the full amount of $350 per month for expenses Father paid for the benefit of the parties' son during the 76 months that each child lived primarily with one parent. Mother argues that the trial court erred in giving Father *any* credit for supporting their son during the 76 month period.

A child support order is a judgment, enforceable in the same manner as any other judgment issued by a court of law. *See* Tenn. Code Ann. § 36–5–101(f)(1); ***Nash v. Mulle****,* 846 S.W.2d 803, 804 (Tenn. 1993). The relevant statute in Tennessee provides:

> Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed.... If the full amount of child support is not paid by the date when the ordered support is due, the unpaid amount is in arrears, shall become a judgment for the unpaid amounts, and shall accrue interest from the date of the arrearage, at the rate of twelve percent (12%) per year. All interest that accumulates on arrearages shall be considered child support.

Tenn. Code Ann. § 36-5-101(f)(1).

Prior to 1987, a child support order could be modified retroactively under certain limited circumstances. *See* ***Rutledge v. Barrett****,* 802 S.W.2d 604, 605–06 (Tenn. 1991). In 1987, Tennessee amended its statutes to remove the authority of state courts to forgive arrears in child support cases. ***Id.*** at 606. The 1987 amendment to our state statute "specifically bars retroactive modification" of a valid child support order. ***Id.*** at 607. Thus, once child support payments become due, they cannot be altered, reduced, or forgiven by the courts of this state. ***Id.; see also*** ***Alexander v. Alexander****,* 34 S.W.3d 456, 460 (Tenn. Ct. App. 2000); ***Netherton v. Netherton****,* 1993 WL 49556, at *2; ***Johnson v. Johnson****,* No. E2003-00130-COA-R3-CV, 2003 WL 22258180, at *3 (Tenn. Ct. App. Sept. 29, 2003).

6

Therefore, trial courts are without authority to forgive any portion of child support arrearages prior to the filing of a petition to modify the child support obligation. Such forgiveness constitutes an unlawful retroactive modification of a valid child support order. *See Brown v. Heggie*, 876 S.W.2d 98, 101 (Tenn. Ct. App. 1993); *Buettner v. Buettner*, 183 S.W.3d 354, 358 (Tenn. Ct. App. 2005); *State ex rel. Whitley v. Lewis,* 244 S.W.3d 824, 829–30 (Tenn. Ct. App. 2007); *State ex rel. Estes v. Estes*, No. E2011-01067-COA-R3CV, 2012 WL 826595, at *4-5 (Tenn. Ct. App. Mar. 13, 2012).

Although a trial court may not retroactively modify a parent's support obligation, this Court has authored numerous opinions regarding the authority of trial courts to offset child support arrears based on the obligor's expenditures to provide necessaries for the child. *See Peychek v. Rutherford*, No. W2003-01805-COA-R3JV, 2004 WL 1269313, at *4 (Tenn. Ct. App. June 8, 2004); *Brownyard v. Brownyard,* No. 02A01-9803-CH-00063, 1999 WL 418352 (Tenn. Ct. App. June 22, 1999); *Hartley v. Thompson,* 01A01-9502-CV-00044, 1995 WL 296202 (Tenn. Ct. App. May 17, 1995); *Oliver v. Oczkowicz,* No. 89-396-II, 1990 WL 64534 (Tenn. Ct. App. May 18, 1990). In *Oliver*, this Court allowed "a credit for voluntary payments made on behalf of the children only where the payment is for the children's necessaries which are not being supplied by the custodial parent." *Id.,* 1990 WL 64534 at *2. "The obligation to provide necessaries requires the provision of appropriate food, shelter, tuition, medical care, legal services, and funeral expenses as are needed." *Peychek,* 2004 WL 1269313 at *4. "In order to maintain a successful claim for necessaries, [Father] 'must prove: (1) that the child needed the particular goods or services that were provided, (2) that [Mother] had a legal obligation to provide the goods or services, (3) that [Mother] failed to provide the goods or services, and (4) the actual cost of these goods or services.'" *Id.* (quoting *Hooper v. Moser,* M2001-02702-COA-R3-CV, 2003 WL 22401283, at *3 (Tenn. Ct. App. Oct. 22, 2003)). The rationale is that a credit against a child support arrearage is not a retroactive modification of support but is given in recognition "that the obligor parent provided the support the court ordered in the first place." *Netherton,* 1993 WL 49556, at *2.

At the time of the parties' divorce, the children were very young. During the trial, Mother testified that it was in their son's best interest to live with his Father full time when he started kindergarten in August 2001. At that time, the parties' daughter began attending pre-school in Nashville and resided primarily with Mother. The parties alternated weekends with the children, and, during the summer, they alternated weeks so that the children were together often.

In arguing that Father should not receive any credit for the support of their son over a six year period, Mother relies on a phrase from *Peychek* that credits against necessaries should only be granted if such payments are for necessaries that the custodial parent "either failed to provide or refused to provide." *Peychek*, 2004 WL 1269313 at

**\*4**. Mother testified that she never refused to pay for necessaries for the parties' son. However, she also testified that each party provided for the child in his or her care. With regard to the necessary support that Father provided for the parties' son from the period of August 2001 through December 2009, Mother testified as follows:

> Q. . . . he paid for food, clothing, shelter, school-related things, the same kind of things you've testified that you've done for the children since they've been with you. You are not willing to give him any credit at all for having done that—
>
> A. No
>
> \*\*\*
>
> Q. . . . you know he paid for those things don't you?
>
> A. I'm sure that he did, as I did for [our daughter].

Mother further argues that Father did not prove that Mother had a legal obligation to provide necessaries for son. However, the original Divorce Judgment clearly states that "the parties shall enjoy joint legal custody of the parties' minor children with [Mother] having physical custody of the parties' minor children." Moreover, in Tennessee, children have a right of support from both parents, who are "equally and jointly charged with their care, nurture, welfare, education and support." Tenn. Code Ann. § 34-1-102(a) (2005). Parents have a duty to support their children until the children reach the age of majority or graduate from high school, whichever occurs later. *See* Tenn. Code Ann. § 34-1-102(a), (b) (2005); *see also* **Kirkpatrick v. O'Neal**, 197 S.W.3d 674, 679 (Tenn. 2006). Under Tennessee law, Mother has a legal obligation to support her son, and Mother's testimony clearly reflects the parties' agreement for each to provide support and necessaries for the child in his or her custody.

The trial court gave Father a $250 monthly credit against the necessaries he provided to his son for items such as housing, food, clothing, and healthcare. Although Father argued that he spent an average of $750 per month in caring for his son, the trial court only gave him credit for $250 each month. Our opinion in **Peycheck** clearly states that the credit for necessaries cannot exceed the amount of support due for the period during which the necessities were furnished. **Peychek**, 2004 WL 1269313, at \*4 (Tenn. Ct. App. Jun. 8, 2004). Father concedes this point. However, he maintains his argument that the trial court should have given him full credit for his monthly child support obligation of $350. In light of the testimony of both parties at trial, including Father's

8

testimony as to his monthly expenses and the necessaries that he provided to the parties son, we conclude that the trial court did not abuse its discretion in awarding Father a $250 per month credit for necessaries.

Mother cites to the **Peycheck** opinion to support her position that any credit for necessaries sounds in contract and must be commenced within six years after the necessaries were provided. **Peycheck,** 2004 WL 1269313 at *3 (citing **Foster v. Adcock**, 161 Tenn. 217, 220, 30 S.W. 2d 239, 240 (Tenn. 1930)); Tenn. Code Ann. §28-3-109(a)(3) (2001). We agree. Because Mother's petition to modify support was filed in April 2013, Father is time-barred from receiving any credit for necessaries prior to April 2007. The trial court credited Father $250 per month for 76 months beginning in October 2003 and ending in January 2010. Because Father is not entitled to receive a credit prior to April 2007, we vacate the award and remand to the trial court to make a fresh determination of the arrearages from April 2007 forward.

### B.    Tuition

With regard to the tuition, the record contained four separate tuition contracts that both parties signed for their son for the 2010-2014 school years, and two for their daughter for the 2012-2014 school years. These contracts make each party jointly and severally liable for the full cost of tuition and school expenses listed in the contract. The trial court determined that the majority of these costs were paid by Mother. The trial court also made a specific finding that the total of the parties' individual incomes was in excess of $90,000, which it found "sufficient such that the parties can afford to send the children to private school."

At the time of the parties' divorce, the children were too young to go to school, and the Divorce Judgment was silent on the issue of private school. The trial court cited the cases of **Richardson v. Spanos**, 189 S.W.3d 720 (Tenn. Ct. App. 2005) and **Kraus v. Thomas**, No. M2012-00877-COA-R3-CV, 2013 WL 2612458 (Tenn. Ct. App. 2013) in support of its conclusion that the parties can afford to send the children to private school. Furthermore, the trial court found that both parents had agreed to "be equally liable for the cost of educating their children." For these reasons, the trial court found that:

> [E]ach parent is liable for one half of the costs of the private school tuition and fees. From 6/10/2010 until 11/25/2013, the agreed upon private school tuition and expense amounted to $41,308.50 obligating each parent equally results in father owing $20,654.25 toward which father has paid $3,450.00 for a net amount of $17,204.25.

9

Additionally, the trial court found Father to be responsible for 50% of any future tuition and costs, including a meal ticket, if required. The trial court held that tuition and fees could be paid directly to the school by either parent and that any additional school related expense would be borne equally by the parties, with each party paying 50%.

The Tennessee Child Support Guidelines specifically address educational expenses as a deviation from the standard child support amounts. The child support provisions under the old guidelines stated that "[e]xtraordinary educational expenses . . . *shall* be added to the percentage calculated in the above rule [setting out the percentage of net income to be paid as child support]." ***Barnett v. Barnett***, 27 S.W.3d 904, 907 (Tenn. 2000) (emphasis added). However, "[i]n 2005 the child support guidelines were revised to provide that additional support for extraordinary educational expenses should be calculated separately and 'may' be added to the basic support award." ***Kaplan v. Bugalla***, 188 S.W.3d 632, 638 n. 9 (Tenn. 2006). This Court has previously determined that the change in wording under the Guidelines from "shall" to "may" grants the trial court discretion in determining payment of private school tuition. ***Johnson v. Johnson***, No. M2008-00236-COA-R3-CV, 2009 WL 890893, at *10 (Tenn. Ct. App. Apr. 2, 2009).

The current child support guidelines provide:

> (i) Extraordinary educational expenses may be added to the presumptive child support as a deviation. Extraordinary education expenses include, but are not limited to, tuition, room and board, lab fees, books, fees, and other reasonable and necessary expenses associated with special needs education or private elementary and/or secondary schooling that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together.

> (ii) In determining the amount of deviation for extraordinary educational expenses, scholarships, grants, stipends, and other cost-reducing programs received by or on behalf of the child shall be considered.

> (iii) If a deviation is allowed for extraordinary educational expenses, a monthly average of these expenses shall be

10

> based on evidence of prior or anticipated expenses and
> entered on the Worksheet in the deviation section.

Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)(1). When making a deviation from the presumptive amount of support, the court must detail "the basis for the deviation and the amount the child support order would have been without the deviation." Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(b). The Guidelines further explain the requirements for deviating from the presumptive child support amount stating in pertinent part:

> (c) When ordering a deviation from the presumptive amount of child support established by the Guidelines, the tribunal's order shall contain written findings of fact stating:
>
> 1. The reasons for the change or deviation from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and
>
> 2. The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and
>
> 3. How, in its determination,
>
> (i) Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and
>
> (ii) The best interests of the child for whom support is being determined will be served by deviation from the presumptive guideline amount.

Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(c).

"[T]he guidelines contemplate private school tuition to be an 'extraordinary educational expense' because the tuition exceeds or departs from the cost of public schooling." *Barnett*, 27 S.W.3d at 907. "[P]ayment of extraordinary educational expenses is a separate component of an obligor's [basic child support obligation]" and a trial court "can order the obligor to pay less than the full amount of a child's (or children's) extraordinary educational expenses, depending upon the proof in a particular case." *Kaplan*, 188 S.W.3d at 636; *Richardson*, 189 S.W.3d at 728-29 (holding that "this court has consistently approved arrangements requiring the non-custodial parent to pay only a

portion of the private school expenses even when the non-custodial parent's income far exceeds that of the primary residential parent.").

Here, the trial court specifically found that "mother and father's individual incomes total over $90,000, which is sufficient such that the parties can afford to send the children to private school." However, in making this determination, the trial court failed to consider the cost of private school tuition in light of the significant increase in Father's monthly child support obligation as well as the monthly arrearage payment that Father will now pay as a result of the trial court's order. The trial court determined Father's gross monthly income to be $4,501.00. Our review of the record indicates that the deductions from Father's income for federal income taxes and FICA are $806.83 per month. Father's basic child support obligation was determined by the trial court to be $806.40 per month. The trial court also ordered Father to pay $468.88 each month toward Father's child support arrearage. Mother testified that the cost of tuition for both children was approximately $14,950 for the 2013-2014 school year. Under the order of the trial court, Father's portion of the tuition payments would be approximately $623 per month (not including any "school-related expenses"). When we consider the payments ordered by the trial court in addition to the $806.83 Father pays each month for his federal income taxes and FICA payments, Father is left with less than $1,800.00 to pay all of his expenses. The children's best interest must be tempered by Father's ability to pay. The evidence in the record preponderates in favor of a finding that the addition of 50% of the children's tuition would be unjust and inappropriate in this case given Father's limited income. Therefore, we reverse this portion of the trial court's order.

Father has also requested a determination regarding his obligation to reimburse Mother for private school tuition that she paid in the three years *prior* to filing her petition. The trial court found that Father was responsible for one-half of the costs that Mother incurred sending the children to private school for the years 2010 through 2013 and granted Mother a judgment for $17,204.25 for past tuition. We do not reach this issue, however, because Mother specifically waived it during her testimony before the trial court. Mother testified as follows:

> Q.    Now, you're not asking this Court to re—to order Mr. Martin to reimburse you for tuition for the past three years, are you?
>
> A.    No, absolutely not. Just from the date or just this contract year, from the – my date of filing.
>
> Q.    Okay. So from the day you filed this action –

12

A.      Yes.

Q.      -- forward you're asking?  Okay.

In Mother's reply brief, she also states that she

> does not contest that the judgment of $17,204.25 for past
> tuition paid by Mother should not have been granted.  While
> Mother asked for such relief in her Petition and Amended
> Petition, Mother testified at trial that she was . . . seeking
> tuition from the date of filing her Petition in April 2013
> forward.

Insofar as there was: (1) no mention of private school education in the Divorce Judgment; (2) no subsequent court order or written agreement between the parties regarding private school education for the parties' children; and (3) Mother specifically waived this issue, we reverse the judgment against Father in the amount of $17,204.25 for tuition payments incurred by Mother from June 2010 through November 2013.

From January 2011 through June 2012, Father paid his child support via payroll deduction in the amount of $200 every two weeks.  This resulted in an overpayment of $83.33 per month.  From July 2012 through November 2013, Father paid his child support via payroll deduction in the amount of $250 every two weeks, which resulted in an overpayment of $191.67 per month.  Mother testified that the money paid by Father above the original child support amount was for the children's private school tuition. Father argued that the additional funds were given to Mother in order to "help out," because she said she needed more money but that they were not designated for tuition.

Both parties testified that the money Father paid each month went into an account Mother set up to receive those funds.  The trial court found that Father had an overage of $3,450 that should be credited to Father's obligation for tuition payments for the years prior to Mother filing her petition for modification.  "The court may credit an obligor parent's overpayments against arrearages in some circumstances."  *Dewerff v. Dewerff*, M2004-01283-COA-R3-CV, 2005 WL 2104736 (Tenn. Ct. App. 2005) (citing *Koehler v. Koehler*, 559 S.W. 2d 944, 950 (Tenn. Ct. App. 1977)).  As we have held that this issue was waived and Mother specifically testified that she was not seeking tuition payments for any period prior to the filing of her petition, we conclude that any overage should be credited toward Father's child support arrearage.  In light of our holdings in this case with regard to tuition, we pretermit Mother's questions regarding whether the trial court erred in allowing Father to pay the school directly rather than pay his portion to Mother and whether a particular portion of the retroactive tuition was contractual.

13

### C.    Payment of Support through Wage Assignment

The final issue under review is whether the trial court erred in denying Mother's request for child support to be paid through the Tennessee Child Support Receipting Unit by wage assignment and by granting a permanent injunction against mother seeking child support arrearages to be paid through the Tennessee Child Support Receipting Unit by wage assignment.  The final order of the trial court is not clear on this issue; it simply states that "Father's motion for injunctive relief against enforcement of January 29, 2014 is granted."  In reviewing Father's motion for a restraining order and to temporarily approve child support and tuition payments, Father requested that the trial court issue an order restraining Mother and the child support office from issuing a wage assignment against Father's wages."

Tennessee Code Annotated Section 36-5-501(a)(2) requires payment of child support by wage assignment "*unless the court finds good cause not to order wage assignment.*"(emphasis added).  "Good cause" shall only be established by proof that payment by wage assignment is *not* in the best interest of the child, or that there is a written agreement between the parties providing for "alternative arrangements." ***Id.***  If the court finds good cause, it shall state specifically why the wage assignment is not in the best interest of the child.  ***Id.; see also State ex rel. Rickard v. Holt,*** No. M2009-01331-COA-R3-CV, 2010 WL 1240894, at *3 (Tenn. Ct. App. Mar. 30, 2010); ***Reeder v. Reeder***, 375 S.W.3d 268, 276-77 (Tenn. Ct. App. 2012).

Tennessee Rule of Civil Procedure 52.01 states that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment."  Although the trial court made extensive findings of fact in this case, there is nothing in the record to indicate the findings of the trial court with regard to its decision to grant Father's request for injunctive relief regarding wage assignment.  Specifically, there is no finding as to why the wage assignment is not in the best interest of the children.  Additionally, both parties reference a recent bankruptcy filed by Father.  Our record is devoid of any documents or orders regarding Father's most recent bankruptcy, other than one order unsigned by the judge submitted in the appendix to Mother's reply brief.  Regardless, there is no indication that the trial court considered the alleged bankruptcy in relieving Father of wage assignment.  Because there are insufficient findings to justify such relief, we vacate this portion of the trial court's order and remand for sufficient findings of fact as required under Tennessee Rule of Civil Procedure 52.01.

### V.    Conclusion

For the foregoing reasons, we vacate the trial court's determination of the child support arrearage and remand for a fresh determination in accordance with this opinion. We reverse the trial court's judgment against Father in the amount of $17,204.25 for past due tuition. We reverse the trial court's order requiring Father to pay 50% of the children's tuition and school related expenses for private school. We vacate the portion of the trial court's order regarding payment of child support through wage assignment and remand for sufficient findings of fact required under Tennessee Rule of Civil Procedure 52.01. Costs of the appeal are assessed equally against the parties, and their sureties, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE