IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 27, 2017 Session

**ISIAH HOPPS, JR. v. JACQUELYN F. STINNES**

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002303-14      Robert L. Childers, Judge**

_____

**No. W2016-01982-COA-R3-CV**
_____

This is a health care liability action in which a patient alleged that an emergency room nurse practitioner violated the applicable standard of care in her treatment of him by failing to order proper tests and failing to perform a proper examination. The case was tried before a jury for three days.  At the close of proof, the trial court granted a partial directed verdict in favor of the Appellee, dismissing Appellant's claims that Appellee breached the standard of care by not ordering a CT scan.  The court also refused to allow the jury to consider whether Appellant's vision loss was due to Appellee's negligence. The jury returned a verdict in favor of Appellee.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Bill M. Wade, Memphis, Tennessee, for the appellant, Isiah Hopps, Jr.

William H. Haltom, Jr., and Laura Lampton Deakins, Memphis, Tennessee, for the appellee, Jacquelyn F. Stinnes.

**OPINION**

**I. FACTS & PROCEDURAL HISTORY**

An object propelled by a weed eater struck Appellant Isiah Hopps, Jr. ("Mr. Hopps") in his left eye on August 13, 2013, and he therefore visited the emergency department of Methodist Healthcare's North Campus that same day.  Appellee Jacquelyn F. Stinnes ("Nurse Stinnes") is a certified nurse practitioner who treated Mr. Hopps at the emergency department for his eye injury.  In doing so, Nurse Stinnes obtained a history

from Mr. Hopps regarding the circumstances that brought him to the emergency room and examined his eye with an ophthalmoscope and a Wood's lamp.[1] She made a diagnosis of a superficial abrasion of the cornea and conjunctivitis, prescribed him antibiotic eye drops and a pain reliever, and gave Mr. Hopps discharge instructions to return to the emergency room if his condition worsened and to follow up with his doctor within two days.

Four days later, on August 17, 2013, Mr. Hopps presented to the Regional Medical Center at Memphis (the "Med") complaining of pain, vision loss, and his left eye protruding from the eye socket. Mr. Hopps was admitted to the Med that day. At the Med, several CT scans were taken of Mr. Hopps' head and face, which revealed that he had "[l]eft preseptal and intra orbital cellulitis with retrobulbar abscess and proptosis." He was diagnosed with panophthalmitis and placed on broad-spectrum antibiotics. Mr. Hopps was discharged from the Med on August 27, 2013, and he eventually lost his left eye due to infection.

On May 23, 2014, Mr. Hopps filed a health care liability suit against Nurse Stinnes, T.M. Carr, M.D., P.C., and Methodist Health Care – Memphis Hospitals.[2] In his complaint, Mr. Hopps alleged that Nurse Stinnes violated the applicable standard of care in her treatment of him on August 13, 2013 by failing to order the proper tests and for failing to perform proper examinations. According to Mr. Hopps, Nurse Stinnes' breach of the standard of care resulted in his loss of vision in his left eye as well as other damages. In her answer, Nurse Stinnes admitted that she "had a duty to provide professional services to [Mr. Hopps] in accordance with the applicable standard of care" when she treated him for his eye injury, but she also "affirmatively state[d] that she did in fact meet [that] standard." Nurse Stinnes subsequently amended her answer to allege the comparative fault of Mr. Hopps due to his alleged failure to exercise reasonable care for his own health and well-being. According to Nurse Stinnes, Mr. Hopps' nonobservance of her discharge instructions, including his failure to see a doctor within two days and/or return to the emergency room if his condition worsened after discharge, caused delay in his treatment that caused or contributed to his alleged injuries.

---

[1]A Wood's lamp is an ultraviolent light that can be used to detect abrasions on the eye. Before using the lamp, Nurse Stinnes applied a fluorescein stain to the eye. Once the Wood's lamp is used to view an eye with this stain, any injuries or tears in the eye are illuminated indicating any problem area.
[2]On September 3, 2014, T.M. Carr, P.C. filed a motion to dismiss based on the contention that Nurse Stinnes was not and had never had been its employee. On October 31, 2014, an order of voluntary nonsuit was entered dismissing T.M. Carr, P.C. on that basis. The trial court also dismissed Mr. Hopps' claims against Methodist Healthcare – Memphis Hospitals on September 18, 2015, holding that Mr. Hopps had not "submitted any expert proof that the Methodist nursing staff deviated from the standard of care." Therefore, the only defendant subject to this appeal is Nurse Stinnes.

The matter was heard by a jury over three days in April 2016. Mr. Hopps presented the testimony of Dr. William E. Hauda II and Dr. Shree Kurup as expert witnesses pursuant to Tennessee Code Annotated section 29-26-115. Dr. Hauda testified as to the standard of care applicable in this case and that Nurse Stinnes' treatment of Mr. Hopps did not meet the required standard of care. Dr. Kurup testified regarding the causal link between Nurse Stinnes' alleged deviation from the standard of care and Mr. Hopps' injuries. In pertinent part, Dr. Hauda opined that the proper standard of care applicable to Nurse Stinnes' treatment of Mr. Hopps on August 13, 2013 would have required Nurse Stinnes to refer Mr. Hopps "emergently to an ophthalmologist the day he was seen, or urgently for follow-up the following day for these assessments." Dr. Kurup testified that Mr. Hopps might have been able to save some of his vision and his eye if he had seen an ophthalmologist earlier.

Nurse Stinnes presented the testimony of competing expert witnesses, including Dr. Loren Crown. Dr. Crown testified that Nurse Stinnes fully complied with the standard of care in her treatment of Mr. Hopps, including taking his history, examining his eye with the Wood's lamp, diagnosing, prescribing treatment, and providing discharge instructions to Mr. Hopps. Dr. Crown also lamented that Mr. Hopps did not properly follow Nurse Stinnes' discharge instructions that ordered him to follow up with his doctor within two days and return to the emergency room if his condition worsened. According to Dr. Crown, the complications that Mr. Hopps suffered from his eye injury did not mean that Nurse Stinnes deviated from the standard of care. Dr. Crown testified that "[t]he standard of care was met, and the outcome was not affected . . . by a deficiency in the standard of care."

At the close of proof, Nurse Stinnes moved for a directed verdict on the entire case or, in the alternative, a partial directed verdict on (1) whether Mr. Hopps lost his vision in his left eye due to the alleged negligence of Nurse Stinnes, and (2) whether Nurse Stinnes violated the standard of care by failing to order a CT scan. After hearing arguments from counsel and reviewing notes from trial testimony, the trial court determined that "a directed verdict was appropriate on [Mr. Hopps'] claim for loss of vision, and on [Mr. Hopps'] claim that [Nurse Stinnes] violated the standard of care by failing to order a CT scan" due to insufficient proof on the issues. The remainder of the case was submitted to the jury for deliberation. The jury returned a verdict in favor of Nurse Stinnes.

Mr. Hopps filed a motion for a new trial on May 25, 2016, alleging essentially the same three errors he now presents to this Court on appeal: (1) "The jury should have been allowed to decide whether the standard of care required a CT scan;" (2) "Plaintiff's jury verdict form should have been accepted;" and (3) "The jury should have been allowed to consider the likelihood that Mr. Hopps would have retained some degree of vision in his eye but for [Nurse Stinnes'] negligence." On August 25, 2016, the trial court entered an

order denying Mr. Hopps' motion for a new trial and approving the jury verdict rendered on behalf of Nurse Stinnes in its capacity as the 13th juror.

## II.    ISSUES PRESENTED

Appellant presents the following issues, as slightly reworded, for review on appeal:[3]

1. Whether the trial court erred by refusing to let the jury determine whether the standard of care required Nurse Stinnes to order a CT scan?

2. Whether the trial court erred by refusing to let the jury consider Mr. Hopps' degree of vision loss?

## III.    STANDARD OF REVIEW

When presented with a motion for a directed verdict, a "trial court [must] determine whether, as a matter of law, the evidence is sufficient to create an issue for the jury to decide." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 231 (Tenn. Ct. App. 1999) (citing *Underwood v. Waterslides of Mid-America, Inc.*, 823 S.W.2d 171, 176 (Tenn. Ct. App. 1991)).    "Directed verdicts are proper only when reasonable minds, after considering the evidence, could reach only one conclusion." *Id.*  Because a trial court's determination of whether to grant or deny a motion for a directed verdict is a question of law, we review the decision on appeal de novo with no presumption of correctness. *Thomas Energy Corp. v. Caterpillar Fin. Servs. Corp.*, No. E-2014-00226-COA-R3-CV, 2014 WL 7366676 at *8 (Tenn. Ct. App. Dec. 26, 2014) (citing *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008)).  However, appellate courts do not re-weigh the evidence or make credibility determinations with regard to witnesses, but rather we view the evidence in the light most favorable to the party against whom the motion is made. *White*, 21 S.W.3d at  231.

## IV.    DISCUSSION

### A. <u>CT Scan</u>

Mr. Hopps asserts that the trial court erred in precluding the jury from considering whether Nurse Stinnes' failure to order a CT scan when she treated him for his eye injury

---

[3]Mr. Hopps' appellate brief included an additional issue for appeal: "Did the trial court err in rejecting Mr. Hopps' proposed jury verdict form?"  Mr. Hopps, by and through counsel, notified this Court at oral argument that he was voluntarily withdrawing that issue from this Court's consideration.

was a deviation from the standard of care. In order to prevail on his claim of health care liability against Nurse Stinnes, Mr. Hopps was required to present expert proof establishing the applicable standard of care, and that Nurse Stinnes' conduct deviated from that standard of care. Tenn. Code Ann. § 29-26-115(a). In granting Nurse Stinnes' motion for directed verdict, the trial court held that there had been no expert proof that Nurse Stinnes deviated from the standard of care by failing to order a CT scan in order to allow that issue to go before the jury.

The record on appeal indicates that no expert witness in this case ever testified that the standard of care required Nurse Stinnes to order a CT scan for Mr. Hopps. Nevertheless, Mr. Hopps argues that there was in fact expert testimony that a CT scan would have been appropriate when Mr. Hopps was treated by Nurse Stinnes by combining the expert testimony of one of his experts with the testimony of one of Nurse Stinnes' experts. The crux of Mr. Hopps' argument is that his expert, Dr. Kurup, testified that the projectile from the weed eater that hit Mr. Hopps in the eye was a "high velocity missile." Dr. Kurup, however, was not an expert on the standard of care. Mr. Hopps then attempts to bootstrap the later testimony of Nurse Stinnes' expert, Dr. Crown, who disagreed with Dr. Kurup on the nature of the impact that the projectile had on Mr. Hopps' eye, stating that an injury from a weed eater is a low velocity impact injury. Dr. Crown was also asked whether a "high-velocity impact to the eye [would] have warranted a CT scan," to which Dr. Crown replied "yes." According to Mr. Hopps, the combination of Dr. Kurup's assertion that the injury was due to a high velocity missile and Dr. Crown's testimony that a high impact injury would have required a CT scan is sufficient to satisfy the requirements of Tennessee Code Annotated § 29-26-115(a).

However, when faced with this same argument by Mr. Hopps at the hearing on Nurse Stinnes' motion for directed verdict, the trial court considered the entire context of Dr. Crown's testimony rather than simply parsing out the reply to the aforementioned question as Mr. Hopps has suggested. After doing so, the court held, and we agree, that there was no proof that the standard of care required Nurse Stinnes to order a CT scan. To illustrate this point, we have included the following additional portions of Dr. Crown's testimony:

> Q: You consider a weed eater to be a low velocity, low impact injury, correct?
>
> A: That is correct.
>
> . . . .
>
> Q: Would a high-velocity impact to the eye have warranted a CT scan?

5

A:     Yes

       . . . .

Q:     In the circumstances of this case, would the standard of care of a nurse practitioner require a CT scan?

A:     No, and I want to point out that is substantiated by the fact that when they did a CT scan, nothing was found.

       . . . .

Q.     I need to know if the standard of care requires a CT scan in this situation.

A.     No, certainly not.

       . . . .

Q.     If you saw this patient on August 13, would you have ordered a CT scan?

A.     No, I wouldn't.

Q.     Would the standard of care require that?

A.     No.

After reviewing the record in the light most favorable to Mr. Hopps, we agree with the trial court that there was no expert testimony by anyone that the standard of care required a CT scan sufficient to create a question of fact for the jury to decide. We therefore affirm the trial court's directed verdict on that issue.

## B. Degree of Vision Loss

Because we hold that the trial court did not err in finding that there was no expert proof that the standard of care required a CT scan, and the jury found that Nurse Stinnes did not otherwise breach the standard of care, Mr. Hopps' allegation of error with regard to the trial court's refusal to allow the jury to consider his degree of vision loss is pretermitted. We therefore decline to consider the substance of Mr. Hopps' arguments

relative to his vision loss.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to the appellant, Isiah Hopps, Jr., and his surety, for which execution may issue if necessary.

_____

BRANDON O. GIBSON, JUDGE

7