FILED

12/10/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

**STATE OF TENNESSEE v. PEJHMAN EHSANI**

**Criminal Court for Davidson County**
**No. 2022-B-953 et al.**

_____

**No. M2025-01612-CCA-R9-CD**

_____

**ORDER**

This matter is before the Court upon application of the Defendant, Pejhman Ehsani, for permission to pursue an interlocutory appeal. Tenn. R. App. P. 9. The State has filed a response in opposition. The Defendant seeks review of the criminal court's order denying his motion to dismiss the charges against him in this case. Upon full consideration, the application is denied for the reasons stated below.

Rule 9 outlines the procedure for obtaining interlocutory appellate review of a trial court order. Both the trial and appellate courts must approve the appeal. To that end, a party must first file a motion in the trial court requesting the appeal within thirty days of the order being appealed. Tenn. R. App. P. 9(b). If the trial court determines the interlocutory appeal shall be allowed to proceed, the party must then file an application for permission to appeal in this Court within ten days of the trial court's order granting the appeal. Tenn. R. App. P. 9(c). The application must be accompanied by copies of the trial court order from which appellate review is being sought, the trial court's statement of reasons for granting the appeal, and the other parts of the record necessary for consideration of the application. Tenn. R. App. P. 9(d). Thus, and because there is generally no record already on file when a party seeks a Rule 9 appeal, it is that party's responsibility to provide this Court with an *ad hoc* record of the proceeding below. The Defendant's application is timely and sufficient for this Court's review.

**Background**

The Defendant initiated divorce proceedings against his wife on April 21, 2020. *Ehsani v. Ehsani*, No. M2022-01819-COA-R3-CV, 2024 WL 301903 (Tenn. Ct. App. Jan. 26, 2024). On June 15, 2020, the wife obtained an Order of Protection against the

Defendant. That order had an end date of December 15, 2020. On October 13, 2020, the circuit court amended the Order of Protection to allow certain communications between the Defendant and his wife. On August 21, 2021, the circuit court filed an order extending the Order of Protection until resolution of the divorce proceeding. That order, which was agreed upon by the Defendant, was entered *nunc pro tunc* to December 18, 2020, the date on which the circuit court heard the wife's motion to extend the Order of Protection. It appears the wife filed the motion to extend on December 4, 2020. On July 28, 2022, the circuit court entered an order granting a default judgment against the Defendant in the divorce proceeding. The circuit court's order also extended the Order of Protection until May 17, 2027. The Defendant appealed that order to the Court of Appeals. The appellate court vacated in part and affirmed in part the circuit court's order. *Id.* at \*5. As pertinent to the matter at hand, the appellate court vacated the portion of the order granting a default judgment against the Defendant. *Id.* As to his claim "that Wife's order of protection ended on December 15, 2020, and that a subsequently entered order purporting to extend the order of protection was untimely," the appellate court held the Defendant waived the issue because he "fail[ed] to provide a reference to the record *supporting* his contention that the order of protection, in fact, terminated on December 15, 2020." *Id.* (emphasis in original). The Defendant does not elaborate on the current status of the divorce proceeding in the instant application.

The Defendant has been indicted on six counts of violating the Order of Protection. Although the Defendant did not include the indictments in his application, the trial court's order reflects the offense dates were June 20, 2021 (2022-B-953), June 24, 2021 (2022-C-1510), July 1, 2021 (2022-C-1511), July 29, 2021 (2022-C-1754), between March 1, 2022 and April 4, 2022 (2022-C-1642), and June 16, 2024 (2025-B-1403). The Defendant is also charged with violating a no-contact order in case number 2022-C-1754 and aggravating stalking in case number 2022-C-1642. On May 14, 2025, the Defendant filed a motion to dismiss all charges in the first five cases listed above, except for the charge of violating a no-contact order, and then supplemented his motion to dismiss on July 23, 2025, to include the charge in case number 2025-B-1403. The criminal court held a hearing on July 2, 2025, and thereafter, on September 9, 2025, issued its written order denying the Defendant's motion to dismiss the indictments. After recounting the procedural history above, the criminal court also observed:

> On August 6, 2024, the Third Circuit Court entered an Order on the Wife's Motion for Clarification on the Court of Appeals Opinion that pertained to the divorce case []. This Order emanated from a hearing that occurred on July 26, 2024. The Order reads, "The Court finds that the Order of Protection currently remains in place and the Court of Appeals has done nothing to undermine the Order of Protection. The Court finds that the Order of Protection is a valid order and is automatically extended by operation of

law. The Court finds that the Order of Protection shall remain in full force and effect and has been in full force and effect since it was issued."

A copy of the circuit court's August 6, 2024, Order is not included in the instant application, however. The criminal court then issued the following ruling:

The Defendant makes two (2) arguments. The first argument is that there was no valid Order of Protection in place during the offense dates included in case numbers 2022-B-953; 2022-C-1510; 2-22-C-1511; 2022-C-1754; and 2022-C-1642. As such, the Defendant asserts that Violating an Order of Protection was not legally possible. The Defendant maintains that this conclusion is apparent from an analysis of the record.

The second argument centers around the fact that the Circuit Court's Order extending the Order of Protection was not signed and entered until August 26, 2021. The Defendant argues that although the Court's Order was issued *nunc pro tunc* back to December 18, 2020, it did not exist in written form until after the violations of the Order of Protection were alleged to have occurred and therefore this violates the Ex Post Facto Clause of the United States Constitution.

As for the Defendant's first argument, the record is clear that the original OP was issued for a period of six (6) months, beginning on June 15, 2020, and ending on December 15, 2021. The record is clear that at the time the OP was issued, a divorce suit in this matter was already pending. The record is clear that On October 13, 2020, the Circuit Court entered an order modifying the OP. On December 4, 2020, the Defendant's wife filed a motion to extend the OP but the matter was not heard in Circuit Court until December 18, 2020.

On that date, both parties agreed to extend the OP until the resolution of the divorce proceedings. In the agreed extension order, the Circuit Court included language that this extension order was not required for the OP to remain in effect. The Circuit Court Judge cited T.C.A. § 36-3-603 as the authority behind his Court Order that the OP would be valid even without the agreed upon extension.

After reviewing the record, the Court agrees with the Circuit Court Judge as to the impact of T.C.A. § 36-3-603 on this case. Pursuant to T.C.A. § 36-3-603, an OP that is in effect at the time a party files a complaint for divorce, shall remain in effect until the Court modifies the OP, dissolves the

3

OP, or makes the OP part of the divorce decree

In this case, there is no proof that the OP was dissolved or included in the divorce decree. Although there was a modification of the OP, it merely redefined permissible communications, it did not specifically terminate the OP. This Court does not agree with the Defendant's argument that the modification in and of itself causes the OP to terminate on the original termination date. Furthermore, the Court is unable to determine from the record in this case that a valid OP was not in effect at the time of the alleged offense dates. Consequently, the Court finds that there was a valid OP in effect for all of the offense dates in the above-referenced indictments.

The Defendant's second argument is that the OP was not valid because it did not exist in written form until August 26, 2021, well after the alleged offense dates. In *State v. Burgess*, No. M2009-00897-CCA-R3-CD, 2010 WL 3025524 (Tenn. Crim. App., August 4, 2010) (perm. app. denied December 7, 2010), the Criminal Court of Appeals [sic] addressed the validity of an OP entered *nunc pro tunc*. In that case, the Defendant violated an OP when he went into his former residence and murdered his estranged wife and her boyfriend. Just prior to the murder, the OP had been modified by the trial court. However, the written order with those modifications was not filed until two (2) days after the murder. Ultimately, he was convicted of First-Degree Felony Murder and the underlying felony of Aggravated Burglary involved the violation of a valid Order of Protection. The Court addressed the issue of whether there was a valid Order of Protection in effect at the time the Defendant entered his former residence and committed the murders.

The *Burgess* Court cited *Blackburn v. Blackburn*, 270 S.W.3d 42 (Tenn. 2008) and concluded, "as a prerequisite to an entry *nunc pro tunc*, there generally must exist some written notation or memorandum indicating the intent of the trial court to enter the judgment on the earlier date." *Id*. at 54. Also, in *Blackburn*, the Court analyzed Rule 58 of the Tennessee Rules of Civil Procedure and found that it permits the Court to select an effective date of a judgment that is other than the actual date the judgment is filed with the clerk. *Id*.

In this case, the Order extending the OP that was filed on August 26, 2021, contained the language that, "....the Amended Order of Protection between the two parties is extended, *nunc pro tunc* to December 18, 2020." It is the Court's opinion that the Order extending the OP that was entered

4

*nunc pro tunc* to December 18, 2020, was valid.  As such, all of the above-listed indictments are valid and legally sufficient.  The Defendant's pretrial motion to dismiss is DENIED.

## Rule of Appellate Procedure 9

This Court's review of an application for an interlocutory appeal must begin with the supreme court's caution: "[I]nterlocutory appeals to review pretrial orders or rulings, i.e., those entered before a final judgment, are 'disfavored,' *particularly in criminal cases*." *State v. Gilley*, 173 S.W.3d 1, 5 (Tenn. 2005) (emphasis added).  Again, Rule 9 requires permission from both the trial court and this Court to pursue an interlocutory appeal.  Tenn. R. App. P. 9(a).  To that end, Rule 9(a) sets forth the "character of reasons" the courts should consider when ruling on a request for an interlocutory appeal.  "[W]hile neither controlling nor fully measuring the courts' discretion," an interlocutory appeal may be granted if both the trial and appellate court determine:

> (1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective; (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and (3) the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be reviewable upon entry of final judgment.

Tenn. R. App. P. 9(a).

Rule 9(b) requires a trial court to "specify: (1) the legal criteria making the order appealable, as provided in subdivision (a) of this rule; (2) the factors leading the trial court to the opinion those criteria are satisfied; and (3) any other factors leading the trial court to exercise its discretion in favor of permitting an appeal."  Tenn. R. App. P. 9(b).  The rule also requires a trial court to also "state in writing the specific issue or issues the court is certifying for appeal and the reasons for its opinion."  *Id.*

In the motion he filed in the criminal court, the Defendant requested the court to certify seven issues for appeal.  He asserted there is a need in this case to prevent needless, expensive and protracted litigation and, further, a need to prevent irreparable harm to him.  In support thereof, the Defendant argued the alleged "systemic error [of the *nunc pro tunc*

order extending the original Order of Protection] has created such a confusing and enormous mess that this matter must be addressed before trial [because] [t]hese highly technical issues are not suitable for a jury."

The criminal court held a hearing on the motion, but the Defendant did not include that transcript in his application. Nevertheless, the court, in its written order, certified only one issue for interlocutory review: "Was the Order of Protection issued on June 15, 2020, valid and in effect on June 20, 2021; on June 24, 2021; on July 1, 2021; on July 29, 2021; between March 1, 2022 and April 4, 2022; and on June 16, 2024?" The court opined interlocutory review of that issue "'will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed.'" The court explained:

> If this Order of Protection is found to be invalid and this Court's prior order is reversed, then the above-referenced indictments would have to be dismissed. Essentially, the validity of this Order of Protection is the linchpin issue that is determinative of whether six (6) different indictments potentially proceed to six (6) different jury trials. The Court is of the opinion that this qualifies as expensive and protracted litigation.

> Subdivision (a)(2) of Rule 9 also requires the Court to consider "whether the challenged order would be a basis for reversal upon entry of a final judgment" and to also consider "the probability of reversal." If all six (6) of these indictments proceeded to jury trials and resulted in convictions, the central issue on the direct appeal would be whether the Order of Protection from June 20, 2021, [sic] was valid. This consideration mitigates against granting the Defendant permission to file an interlocutory appeal. As for the probability of reversal, the Court finds that this factor is a close call.

> After reviewing the record and the case files, and after giving consideration to the listed factors in Rule 9, the Court is of the opinion that it is appropriate to grant the Defendant's motion for permission to file an interlocutory appeal because of the need to prevent the needless, expensive, and protracting litigation that would result from six (6), or potentially seven (7), different jury trials.

As the State observes in its response to the instant application, both the Defendant and the criminal court alternate between stating there are six and seven pending indictments against the Defendant. However, both the order denying the motion to dismiss and the order granting the interlocutory appeal only reference six case numbers. Again, the Defendant did not include copies of the indictments in the instant application. Despite the apparent confusion, the criminal court stated that "[a]ll of these indictments stem from the

6

Order of Protection that was issued on June 15, 2020."

## Discussion

In his application to this Court, the Defendant states he "would frame the issue [certified by the criminal court] slightly different." In essence, the issue centers around whether most of the charges against the Defendant can stand if the original Order of Protection, and any purported extensions thereto, were not valid on the alleged offense dates. The Defendant agrees with the criminal court's assessment that potentially protracted litigation might be avoided if the issue is settled before trial. And while he recognizes the court did not address the matter of irreparable harm, the Defendant asserts that harm exists due to the amount of time these cases have been pending and the restrictions placed upon him by the Order of Protection. The State argues the application should be denied because the criminal court did not address whether there is a need to prevent protracted litigation based on "the probability of reversal" of the challenged order. To that end, the State argues the Defendant cannot succeed on appeal because he agreed to the extension of the Order of Protection in December 2020.

It is apparent the order of the criminal court denying the motion to dismiss is merely a step towards final disposition of the merits of this case and the rights of the Defendant will not be lost if review of the issue is delayed until entry of final judgment. If the Defendant is acquitted of the charges, the question becomes moot. If convicted, he may appeal the issue to this Court pursuant to Rule of Appellate Procedure 3. Having to wait for appellate review of an issue raised in a pretrial motion, even a potentially dispositive one, is common in criminal cases. The Defendant has simply failed to establish how any irreparable injury will occur within the usual course of judicial proceedings in the criminal cases. The parameters of the Order of Protection issued in the pending civil divorce proceeding have no bearing on whether this Court will grant an interlocutory appeal in the criminal cases.

The trial court opined that if its ruling on the motion to dismiss is reversed then the charges against the Defendant will be dismissed. As noted above, the filings by the Defendant and the criminal court reference both six and seven cases. In his application, the Defendant states he is charged with nine counts in seven cases. Also, as noted above though, the Defendant did not move to dismiss all of the charges against him. While the Defendant and the criminal court suggest there could potentially be six different jury trials, neither comment on the likelihood that will occur given the extent or nature of the facts of the cases.

Moreover, Rule 9 requires consideration of the "probability of reversal" in assessing the need to prevent protracted litigation. In its order, the criminal court stated consideration

7

of that factor "is a close call." The court did not elaborate on how its ruling on the motion to dismiss could be called into question, however. Indeed, in the order denying the motion to dismiss, it referenced a circuit court order filed on August 6, 2024, which held the Order of Protection remained in place and was not undermined by the Court of Appeals opinion in the divorce proceeding. The Defendant did not include in his current application any documents related to that circuit court order, however. Furthermore, the Defendant specifically agreed in circuit court to extend the Order of Protection.

By granting the application in this instance, interlocutory review would be reduced to the standard rather than the exceptional procedural avenue it is meant to be. Again, having to wait for appellate review of an issue raised in a pretrial motion to dismiss is common in criminal cases. If this Court affirms the criminal court's ruling, the case will become even more prolonged. Finally, if the issue regarding the validity of the Order of Protection requires "a highly technical analysis . . . not suitable for a jury" and is indeed otherwise "the linchpin issue that is determinative" of the criminal cases against the Defendant, as both the Defendant and the criminal court insist, then nothing prevents the Defendant from utilizing the procedure set forth in Rule of Criminal Procedure 37(b)(2)(A) to obtain quicker review.

## Conclusion

Upon review, and for the reasons stated above, the Court hereby denies the Defendant's application for permission to appeal. Because the Defendant was declared indigent by the criminal court, costs are taxed to the State.

Ayers, J., Wedemeyer, P.J., Holloway, J.

8